J-S67042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAHEEM JOHNSON | |
| Appellant | No. 3762 EDA 2015 |

Appeal from the PCRA Order December 14, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007442-2010

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 14, 2016**

Raheem Johnson ("Appellant") appeals from the order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. without an evidentiary hearing.  We affirm.

On November 13, 2009, Appellant fatally shot eighteen year-old Legrand Peterkin outside of Larry's Bar on 5th Street in Philadelphia. Eyewitness Angelica Swint knew both men, as she was Peterkin's cousin and briefly dated Appellant in 2008.  N.T., 10/4/11, at 154, 167.  On the evening in question, she was inside Larry's awaiting the arrival of her child's father, Christopher Marshall, who was Peterkin's best friend, when she noticed Appellant standing across the room.  N.T. at 155-56.  Appellant's presence caused her concern because Peterkin had recently told her he sought

*Former Justice specially assigned to the Superior Court.

revenge against Appellant for group-ambushing him in a nearby store a week earlier. Specifically, Peterkin said he planned to "smack the shit out of Rah-Rah [Appellant's nickname]." N.T. at 226. Peterkin was larger than Appellant and had a boxing background.

Before Marshall arrived at Larry's, Swint received a phone call from Peterkin, and she told him Appellant was inside the bar. N.T. at 159. Marshall and Peterkin arrived shortly thereafter and Swint went outside to talk to Peterkin, who was underage and could not enter the bar. N.T. at 161. Appellant, meanwhile, had preceded Swint out the door and walked over to a jeep, where he put something in his pocket. N.T. at 162-63. Swint asked Peterkin if he was okay and he told her Appellant and he were going to talk about what happened the week before. N.T. at 164. Peterkin then gave Swint a look as if to say "get back in the bar." N.T. at 163. Before she reentered Larry's, she saw the two men talking and thought everything was all right. N.T. at 169, 207. Nevertheless, once she returned to her table, she asked Marshall to go outside to watch over matters, which he did. N.T. at 170.

From about thirty feet away, Marshall could see the men talking momentarily until Peterkin attempted to punch Appellant but missed. N.T. 10/5/16 at 49. Appellant ducked back, pulled a gun out from his waistband, and pointed it at Peterkin. *Id*. Appellant lowered the gun briefly but then pointed it again at Peterkin and shot him. *Id*. Marshall observed Peterkin

run down the block away from Appellant, but Appellant pursued him while firing about five or six more shots. N.T. at 50.

Marshall followed the men and came upon them as they struggled on the ground with each other. *Id.* He pulled Appellant off Peterkin and grabbed the gun, but three of Appellant's friends wrestled him to the ground, took the gun from his pocket, and ran. N.T. at 51.

Inside Larry's Bar, the noise was too loud to hear the gunfire, but someone ran inside and hollered "they're shooting." N.T. 10/4/16 at 171, 208. Swint went outside and heard more shots. N.T. at 176-77. She and others continued toward the end of the block from where the shots emanated and found Appellant standing motionless at a curb and a wounded Peterkin sitting on a flight of steps. N.T. at 184-190. Swint grabbed Appellant by his hoodie and repeatedly asked why he shot Peterkin, but Appellant just looked at her and said nothing. N.T. at 180. Swint released him and went to Peterkin, and Appellant fled before police arrived. Once there, police obtained Peterkin's identification of Appellant as his assailant.

Peterkin was transported to Albert Einstein Medical Center, where he died days later from complications of multiple gunshot wounds to his back, right side of his thigh, right buttock, left thigh, and left middle finger. N.T. at 119-134. The medical examiner ruled the manner of death a homicide, with the gun shot penetrating the back and exiting the lower chest causing the fatal wound. N.T. at 129.

On October 6, 2011, a jury convicted Appellant of Third Degree Murder, 18 Pa.C.S. § 2502(c) and Violation of the Uniform Firearms Act (VUFA), 18 Pa.C.S. § 6108. On January 20, 2012, the court sentenced Appellant to twenty to forty years' incarceration for the murder conviction, with a two and one-half to five year sentence for VUFA to run concurrently. After the trial court denied post-sentence motions, Appellant filed a counseled appeal to the Superior Court, which, on September 24, 2013, affirmed judgment of sentence.

On August 4, 2014, Appellant filed a timely *pro se* PCRA petition, and the court appointed counsel, who filed a supplemental PCRA petition. The court, however, issued a Pa.R.Crim.P. 907 Notice to Dismiss on November 12, 2015, and formally dismissed Appellant's petition on December 15, 2015. This timely appeal followed.

Appellant presents the following four issues for our review:

I.    Is Appellant entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing since trial counsel rendered ineffective assistance of counsel?

   A. Is Appellant entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing as a result of the ineffective assistance of trial counsel for failing to request a jury instruction as to "heat of passion" voluntary manslaughter?

   B. Is Appellant entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing as a result of the ineffective assistance of appellate counsel for failing to properly argue the issue concerning the trial

- 4 -

court's refusal to instruct the jury as to imperfect self-defense voluntary manslaughter?

C. Is Appellant entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing as a result of the ineffective assistance of trial counsel for failing to request the trial court to instruct the jury that the testimony of Angelica Swint emanated from a polluted source?

D. Is Appellant entitled to post-conviction relief in the form of resentencing or a remand for an evidentiary hearing as a result of the ineffective assistance of trial counsel for failing to object to the presentence investigation report and the ineffectiveness of appellate counsel for failing to raise in the direct appeal the issue concerning the excessiveness of Appellant's sentence?

Appellant's brief at 4-5.

As we have stated:

[t]his Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. In evaluating a PCRA court's decision, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. We may affirm a PCRA court's decision on any grounds if it is supported by the record.

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010) (internal

citations omitted). Moreover,

[T]he right to an evidentiary hearing on a post-conviction petition is not absolute. *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super. 2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. *Id.* It is the responsibility of the reviewing

court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. *Commonwealth v. Hardcastle*, 701 A.2d 541, 542–43 (Pa. 1997).

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012) (citations modified).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa.2003). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id*. In the context of a challenge to the discretionary aspects of one's sentence, prejudice may be established only by pleading and proving that the challenge would have resulted in "a reduction in the sentence." *Commonwealth v. Reaves*, 923 A.2d 1119, 1032 (Pa. 2007) (internal quotations and citations omitted) at 1032.

Having reviewed Appellant's brief,[1] the certified record, and the trial court's well-written Pa.R.A.P.1925(a) opinion, we have determined that the Honorable Rose Marie DeFino-Nastasi, in her opinion, cogently and comprehensively disposes of the issues presented on appeal, and so we affirm based on that opinion. *See* PCRA Court Opinion, filed March 15, 2016. With respect to the final issue regarding appellate counsel's alleged ineffective failure to challenge the discretionary aspects of Appellant's twenty to forty-year sentence of incarceration, we add that a claim regarding the discretionary aspects of a sentence raised in the context of an ineffectiveness claim is cognizable under the PCRA. *Commonwealth v. Watson*, 835 A.2d 786, 801 (Pa.Super. 2003) (contrasting claim challenging discretionary aspects of a sentence directly, which is not cognizable), *Commonwealth v. Wrecks*, 934 A.2d 1287, 1289 (Pa.Super. 2007). We

---

[1] The Commonwealth failed to file a "Brief for Appellee" in this matter.

also agree that the trial court applied a standard guideline range sentence under 42 Pa.C.S.A. § 303.17(b), "Deadly Weapon Enhancement/Used Matrix," which, given Appellant's offense gravity score of fourteen and prior record score of one, set a range from 102 months to Statutory Limit, +/- 12 months.

In his statement of reasons for allowance of sentencing appeal, Appellant contends that the trial court reviewed a misrepresentative pre-sentence investigation report containing "arrest information that was either inconclusive, resulted in a not guilty verdict, was dismissed for lack of evidence and/or resulted in withdrawal of the case," and from which was missing both the standard Sentencing Guidelines and the Deadly Weapon Possessed Enhancement guidelines, Appellant claims. Appellant's brief at 15. His sentence for third degree murder, he continues, did not "reflect[ ] proper consideration of [his] history, character, and condition…," *Id.* at 16, and was not consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of Appellant. *Id.* at 17.

Assuming, arguendo, that Appellant sets forth a substantial question regarding the court's discretion warranting review on the merits, we observe initially that his argument fails to allege that, let alone explain how, the court was actually misled by his presentence investigation report, which renders the first allegation raised in his concise statement pointless. To this point, the sentencing record reveals that defense counsel, without

opposition, noted that a series of drug-related arrests listed in Appellant's juvenile record resulted in zero adjudications of delinquency. As such, we discern no confusion or controversy regarding the court's consideration of Appellant's prior record, including his juvenile record. N.T. 1/20/12 at 8-9.

Next, Appellant frequently refers to his sentence as a statutory maximum sentence in isolation, as if it were not also within the standard range guideline sentence under the Deadly Weapons Enhancement/Used matrix. Moreover, Appellant dedicates the vast majority of his argument to setting forth the law applicable to a discretionary aspects appeal without developing a meaningful discussion about what personal factors the trial court improperly failed to weigh in imposing its standard range sentence. In this respect, Appellant offers only the controversial-at-best positions that Peterkin was the aggressor—despite the fact that it was Appellant who went out to meet Peterkin with a loaded firearm at the ready—and that he used his gun with a self-defense mindset—a claim unsupported by eyewitness and expert testimonies confirming he was in pursuit of a fleeing Peterkin when he fired the majority of his shots, including the fatal shot through Peterkin's back.

Notwithstanding Appellant's argument, the notes of testimony from the sentencing hearing show the court tailored its sentence to Appellant's individual circumstances. It heard statements from family members attesting to Appellant's family values, his record of good parenting to his five children, and his acts of kindness to friends. N.T. at 5-8. The court also

received argument from defense counsel explaining that the juvenile system never supplied Appellant with treatment for his obvious drug problem, and that it was not until his arrest and gun conviction in 2009 that he first received help in that regard.  N.T. at 9.

Finally, the court stated that it reviewed the pre-sentence report, the mental health report, the sentencing memorandum filed on behalf of the Commonwealth, the letters given to the court on Appellant's behalf, and listened very carefully to the evidence presented to it during the hearing. N.T. at 21.  Only then did the court acknowledge what it viewed as exacerbating circumstances, namely, that Appellant knew not only the victim but also his family, still decided to bring a handgun to a fistfight against an 18 year-old, fatally shot him in the back as he was running away, and caused grief to a large part of their community in the process.  N.T. at 21-23.

We, therefore, find no arguable merit to Appellant's claim of ineffective assistance of defense counsel, for he cites to nothing in the record to support the position that the court failed to consider all pertinent sentencing factors in imposing a standard range sentence under the Deadly Weapons Enhanced/Used matrix.  Accordingly, we reject Appellant's final ineffectiveness claim.

Order is Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2016

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA**

**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA　:　　　CP-51-CR-0007442-2010

v.　　　　　　　　　　　　　　　　3762 EDA 2015

CP-51-CR-0007442-2010 Comm. v. Johnson, Raheem
Opinion

RAHEEM JOHNSON



7420140311

**FILED**

MAR 1 5 2016

**OPINION**

Criminal Appeals Unit
First Judicial District of PA

Rose Marie DeFino-Nastasi, J.

**PROCEDURAL HISTORY**

On October 6, 2011, Petitioner was found guilty after a jury trial, presided over by the Honorable Rose Marie DeFino-Nastasi, of Third Degree Murder, 18 Pa.C.S. § 2502(c), as a felony of the first degree; and Violation of the Uniform Firearms Act (VUFA), 18 Pa.C.S. § 6108, as a misdemeanor of the first degree.

On January 20, 2012, Petitioner was sentenced to twenty (20) to forty (40) years for the third degree murder conviction; and two and a half (2½) to five (5) years for the VUFA § 6108 conviction, to run concurrently.

On January 27, 2012, Petitioner filed a Motion for Reconsideration of Sentence, which was denied without a hearing on January 31, 2012.

On September 24, 2013, the Superior Court affirmed the judgment of sentence.

On August 4, 2014, Petitioner filed a timely, *pro se* petition under the Post-Conviction Relief Act (PCRA).

On October 29, 2014, Petitioner filed a supplemental PCRA petition.

1

On February 27, 2015, PCRA counsel, Mitchell Strutin, Esq., filed an amended petition.

On August 31, 2015, the Commonwealth filed a Motion to Dismiss.

On November 12, 2015, the Court issued a 907 Notice.

On December 14, 2015, the Court formally dismissed Petitioner's PCRA petition.

On December 15, 2015, Petitioner filed the instant appeal to the Superior Court.

On January 16, 2016, Petitioner filed a 1925(b) Statements of Matters Complained of on Appeal, pursuant to an Order of the Court, claiming that:

1.  Trial counsel was ineffective for failing to request a jury instruction as to "heat of passion" voluntary manslaughter.

2.  Appellate counsel was ineffective for failing to properly argue the issue concerning the trial court's refusal to instruct the jury as to imperfect self-defense voluntary manslaughter.

3.  Trial counsel was ineffective for failing to request a "corrupt source" instruction with regard to the testimony of Angelica Swint.

4.  Trial counsel was ineffective for failing to object to the pre-sentence investigation report.

5.  Appellate counsel was ineffective for failing to argue on direct appeal that Petitioner's sentence was excessive.

### STATEMENT OF FACTS

On November 13, 2009, Raheem Johnson (Petitioner) was speaking with Legrand Peterkin (decedent) outside of Larry's Bar on 5th Street in Philadelphia. At some point, the decedent swung at Petitioner, but failed to land his punch. Petitioner then drew a handgun from

2

his waistband and pointed it at the decedent. The decedent turned to run. Petitioner ran after the decedent, shooting him multiple times – in the back, right thigh, right buttock, left thigh, and left middle finger. On November 21, 2009, the decedent died from complications of multiple gunshot wounds. The manner of death was homicide.

## ANALYSIS

Petitioner asserts five claims of ineffective assistance of counsel in his Rule 1925(b) Statement of Matters Complained of on Appeal.

Counsel is presumed to be effective, and a petitioner has the burden to establish counsel's ineffectiveness. *Com. v. Reid*, 99 A.3d 427, 435 (Pa. 2014) (citing *Com. v. Miller*, 819 A.2d 504 (Pa. 2002)). To establish ineffective assistance of counsel, a petitioner must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel's action or inaction was not grounded on any reasonable basis designed to effectuate the petitioner's interest; and (3) counsel's action or inaction was prejudicial to petitioner. *Com. v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004) (quoting *Com. v. Costa*, 742 A.2d 1076, 1077 (Pa. 1999)); *see Strickland v. Washington*, 466 U.S. 668 (1984). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Com. v. Bedell*, 954 A.2d 1209, 1211 (Pa. Super. 2008) (quoting *Com. v. Bryant*, 855 A.2d 726, 736 (Pa. 2004)). If the claim is without merit, the court's inquiry ends, because counsel will not be deemed ineffective for failing to pursue a meritless issue. *Com. v. Hull*, 982 A.2d 1020 (Pa. Super. 2009).

### Issue I

Petitioner argues that trial counsel was ineffective for failing to request a "heat of passion" voluntary manslaughter jury instruction. Petitioner's claim fails at the outset because it

3

is without arguable merit.

To receive a "heat of passion" voluntary manslaughter instruction, the petitioner must demonstrate that there was evidence in the record that supports such an instruction. *Com. v. Sanchez,* 82 A.3d 943, 979 (Pa. 2013). Specifically, evidence that demonstrates that at the time of the killing, the petitioner acted under a sudden and intense passion resulting from serious provocation from the victim. *Sanchez,* 82 A.3d at 979. The ultimate test to determine whether provocation by the victim was sufficient remains, "whether a reasonable man who was confronted with the provoking events would became impassioned to the extent that his mind was incapable of cool reflection." *Com. v. Hutchinson,* 25 A.3d 277, 314-15 (Pa. 2011) (quoting *Com. v. Thornton,* 431 A.2d 248, 252 (Pa. 1981)). Neither words of provocation nor slight assault are sufficient to reduce murder to manslaughter. *See Com. v. Sheppard,* 648 A.2d 563, 566 (Pa. Super. 1994) (serious provocation was not established when the victim struck defendant's brother and arguments ensued between defendant and victim); *Com. v. Cartagena,* 416 A.2d 560, 563 (Pa. Super. 1979) (stating that a punch by the victim was not legally adequate provocation for the defendant to stab the victim).

In this case, there was no evidence of serious provocation in the record to support a "heat of passion" voluntary manslaughter instruction. Testimony at trial showed that Petitioner and the decedent were speaking outside of a bar. At some point, the decedent attempted to punch Petitioner, but missed. Petitioner then drew a handgun and shot the decedent multiple times: in the back, right thigh, right buttock, left thigh, and left middle finger. N.T. 10/05/11 at pp. 44-49. The mere fact that the decedent swung at Petitioner, who "ducked back," is insufficient to warrant a "heat of passion" instruction under the law. Thus, Petitioner's claim that counsel was

4

ineffective for failing to request a "heat of passion" voluntary manslaughter instruction is without merit. Counsel will not be deemed ineffective for failing to assert a meritless issue.

## Issue II

Petitioner argues that appellate counsel was ineffective for failing to properly argue the issue concerning the trial court's refusal to instruct the jury as to imperfect self-defense voluntary manslaughter on direct appeal. Petitioner's claim fails at the outset because there was no evidentiary basis to support a finding that the Petitioner shot the decedent in self-defense.

"Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." *Com. v. Chine*, 40 A.3d 1239, 1244 (Pa. Super. 2012) (citing *Com. v. Hansley*, 24 A.3d 410, 420 (Pa. Super. 2011) (quoting *Com. v. Mayfield*, 585 A.2d 1069, 1070-71 (Pa. Super. 1991) (en banc)). "Such claim may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration." *Hansley*, 24 A.3d at 420-21.

A claim of self-defense requires evidence establishing three elements: (a) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat." *Com. v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012).

The lesser defense of imperfect self-defense "is imperfect in only one respect—an

5

unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must [be satisfied to prove] unreasonable belief voluntary manslaughter." *Com. v. Bracey*, 795 A.2d 935, 947 (Pa. 2001). If the defendant was not free from fault, neither self-defense nor imperfect self-defense is viable. *Com. v. Sepulveda*, 55 A.3d 1108, 1124-25 (Pa. 2012).

Trial counsel requested an imperfect self-defense jury charge based on Angelica Swint's testimony that Petitioner "looked scared." The trial court denied the request, finding that there was no evidence presented to support a claim of self-defense such that the jury would have a possible basis for finding it:

> "There has been no evidence presented as to the state of mind of this Defendant from any source whatsoever, so the jury would have to engage in conjecture on what the state of mind of the Defendant was because there is nothing in evidence. I don't even think you can use circumstantial evidence on that from what we have, so I will not confuse the jury with that."

N.T. 10/06/11 at p. 17.

In the Rule 1925(b) statement on direct appeal, appellate counsel argued that the trial court erred in failing to charge the jury on imperfect self-defense. However, appellate counsel abandoned this argument in the appellate brief, indicating to the Superior Court that imperfect self-defense was not at issue in this case. Appellate counsel was correct.

Testimony at trial showed that the decedent threw a single punch at Petitioner and missed. Petitioner then pulled a gun from his waistband. As the decedent turned to run away, Petitioner chased the decedent, shooting him as he fled. N.T. 10/05/11 at pp 49-50. Petitioner's

6

decision to respond to the decedent's punch by shooting him multiple times does not constitute proper justification under Section 505, and does not meet the three elements required to establish self-defense. The trial court properly determined as a matter of law that Petitioner was not entitled to a jury instruction on imperfect self-defense under the facts of this case, and therefore, appellate counsel will not be deemed ineffective for abandoning this argument on direct appeal. Since Petitioner's underlying claim is without arguable merit, his ineffectiveness claim must fail.

## Issue III

Petitioner claims trial counsel was ineffective for failing to request a "corrupt source" instruction with regard to the testimony of Angelica Swint.

A "corrupt source" instruction advises the jury that, if they find a witness who testified against the defendant was an accomplice of the defendant, then they should deem that witness a "corrupt and polluted source" and consider the testimony with caution. *Com. v. Collins*, 957 A.2d 237, 262 (Pa. 2008). An accomplice is defined as a person who, with the "intent of promoting or facilitating the offense, [s]he aids, agrees, or attempts to aid such other person in planning or committing it." Pa.C.S. § 306 (c)(1)(ii). A person can be indicted as an accomplice when the evidence has established that she "knowingly and voluntarily cooperate[d] or aid[ed] another in the commission of a crime" with the intent to assist the principal. *Com. v. Hall*, 867 A.2d 619, 630 (Pa. Super. 2005).

A corrupt source instruction is appropriate in cases where the evidence is sufficient to present a jury question with respect to whether the witness was an accomplice (*i.e.*, when the witness could be indicted for the crime which the accused is charged). *Com. v. Busanet*, 54 A.3d 35, 70 (Pa. 2012); *Com. v. Weiss*, 81 A.3d 767, 805 (Pa. 2013). A "corrupt source" instruction is

7

not warranted where the evidence shows that the witness was merely present during the crime. *Collins*, 957 A.2d at 263. Where there is no evidence that would permit a jury to infer that a witness was an accomplice, the court may conclude as a matter of law that she was not an accomplice and refuse to give the accomplice instruction. *Hall*, 867 A.2d at 630.

Petitioner's claim is without merit because there was no evidence presented at trial from which the jury could infer that Angelica Swint was an accomplice of the Petitioner. Ms. Swint told the *decedent* that Petitioner was at the bar. The evidence did not present a jury question as to whether she knowingly and voluntarily cooperated or aided *Petitioner* in the shooting death of the decedent. Since the evidence was insufficient to present a jury question as to whether Ms. Swint was an accomplice, Petitioner's claim that counsel was ineffective for failing to request a "corrupt and polluted source" jury charge is without merit.

### Issue IV

Petitioner argues trial counsel was ineffective for failing to object to the pre-sentence investigation report, which contained arrest information that was either inconclusive, resulted in a not guilty verdict, was dismissed for lack of evidence and/or resulted in withdrawal of the case.

A pre-sentence investigation report includes information regarding the circumstances of the offense and the character of a defendant that is sufficient to assist the judge in determining a sentence. Pa. R. Crim. P. 702(A)(3). Traditionally, Pennsylvania courts "have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings, bail hearings, grand jury proceedings, *sentencing hearings*, parole and probation hearings, extradition or rendition hearings, and others." Pa. R.E. 101 (emphasis added). It is well settled that the sentencing court may consider a defendant's prior arrests that did not result in convictions "as long as the court

8

recognizes that the defendant had not been convicted of the charges." *Com. v. Johnson*, 481 A.2d 1212, 1214 (Pa. Super. 1984).

The record reflects that the sentencing court reviewed the pre-sentence investigation report, the mental health report, sentencing memorandum, and letters sent to the Court on behalf of the Petitioner. N.T. 01/20/12 at pp. 21-23. Petitioner was sentenced within the guidelines. There is nothing in the record indicating that the Court relied on Petitioner's prior arrests when imposing its sentence. Thus, this claim is without merit.

### Issue V

Petitioner argues that appellate counsel was ineffective for failing to argue on direct appeal that his sentence was excessive.

Sentencing is a "matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Com. v. Ferguson*, 893 A.2d 735, 739 (Pa. Super. 2006) (citing *Com. v. Hyland*, 875 A.2d 1175, 1184 (Pa. Super. 2005)). "An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. *Com v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2004). It is more than just an error in judgment. *Id.*

In Pennsylvania, sentencing is individualized and requires the trial court to "fashion a sentence that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[.]" *Com. v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013). If the sentence did not exceed the statutory maximum sentence for the conviction, the sentence is legal and not excessive. *Baker*, 72 A.3d at 660.

9

Petitioner's claim is without merit. Petitioner received an aggregate sentence of twenty (20) to forty (40) years. The offense gravity score (OGS) for Third-Degree Murder is fourteen (14). The Defendant's prior record score was a one (1). The Sentencing Guidelines with the Deadly Weapon Enhancement provide for a sentence of 102 months to the statutory limit of twenty (20) years. Petitioner concedes that his sentence of twenty (20) to forty (40) years for third degree murder is within the sentencing guidelines.

The record reflects that the sentencing court considered the specific facts of this case when fashioning Petitioner's sentence. N.T. 01/20/12 at pp. 21-23. The sentence imposed was neither unreasonable nor the result of partiality, prejudice, bias or ill will; it did not violate sentencing norms nor was it excessively harsh. Furthermore, trial counsel filed a post-sentence motion for reconsideration of the sentence, which the Court denied without a hearing. Counsel will not be held ineffective for failing to assert a meritless claim.

## CONCLUSION

Based on the foregoing, the Court's denial of the PCRA petition should be affirmed.

By the Court:

Rose Marie DeFino-Nastasi, J.

10

**Commonwealth v. Raheem Johnson**
**CP-51-CR-0007442-2010**
**Opinion**

## Proof of Service

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Appellant:                         Raheem Johnson, KJ 4977
                                   SCI Huntingdon
                                   1100 Pike Street
                                   Huntingdon, PA 16654

Type of Service:  ( ) Personal  (x) First Class Mail  ( ) Other, Please Specify


Counsel:                           Mitchell Strutin, Esq.
                                   Strutin & Smarro
                                   1515 Market Street, Suite 1200
                                   Philadelphia, PA 19102

Type of Service:  ( ) Personal  (x) First Class Mail  ( ) Other, Please Specify


District Attorney:                 Philadelphia District Attorney's Office
                                   PCRA Unit
                                   Widener Bldg.
                                   3 South Penn Square
                                   Philadelphia, PA  19107

Type of Service:  ( ) Personal  ( ) First Class Mail  (x) Inter-Office


Date:  03/15/2016

_____
Lauren Alfaro, Esq.
Law Clerk to the Honorable Rose Marie DeFino-Nastasi