J. S62030/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES EDWARD GARRICK, | : | |
| | : | |
| APPELLANT | : | No. 1579 MDA 2015 |

Appeal from the PCRA Order August 13, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0002018-2011

BEFORE: GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 07, 2016**

Appellant, James Edward Garrick, appeals from the August 13, 2015 Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-46, challenging the effectiveness of trial counsel. Because we conclude that trial counsel failed to adequately investigate or present character witnesses, we reverse.

Appellant was convicted after a jury trial of Criminal Attempt-Rape by Forcible Compulsion and Simple Assault in connection with an event that occurred on May 12, 2011.[1] Appellant filed the instant PCRA Petition averring ineffective assistance of trial counsel for failing to present character witnesses. As the credibility of witnesses and the competing factual

---

[1] Appellant was represented at trial by Karl E. Rominger, Esq.

narratives presented by the Commonwealth and Appellant are critical to our disposition in this case, we summarize the evidence adduced at trial.

The Commonwealth's version of events, which the jury accepted, can be summarized as follows. The Complainant in this case, Diane Ramsey, had been a friend of Appellant's wife for many years. On May 12, 2011, Appellant's wife was out of town undergoing treatment at Johns Hopkins, and had asked Complainant to watch her three cats while she was away. Complainant stopped by the home, and let herself in after knocking. She saw Appellant in the living room, and asked whether his wife was home. When Appellant tried to walk away from her, Complainant followed him into the living room. We quote from the trial court Opinion regarding the next set of events:

> In the living room, [Appellant] grabbed Complainant, knocked a soda and cigarette out of her hands, and threw her on the couch, telling Complainant "that [she] owe[d] him a f[**]k." [Appellant] threw Complainant onto the couch, grabbed her ankles, and put her legs by her head, pulling her hair as he tried to pull her pants down. Complainant further described how [Appellant] was attempting to remove her jeans, but was unable to pull them off. Complainant struggled free from [Appellant] and, when free, kicked him in either the stomach or groin hard enough to get [Appellant] to back away. Once loose, Complainant starting running out of the door and [Appellant] stated that if "[she] told anybody he'd kill [her], if [she] called the cops."
>
> Complainant got into her car, drove down the road, and called the police who met her minutes later.
>
> [Complainant complained of injuries to her scalp, foot, and leg. She had a neighbor take photographs of her injuries, which the

Commonwealth introduced into evidence at trial. They show small bruises on her leg and ankle.]

Trial Court Opinion, filed 1/18/13, at 3-6 (footnotes omitted).

In her statement to police about this incident, Complainant told Trooper Matthew Johnston that Appellant had previously raped her in 2006 while she was staying in Appellant's home.[2]

At trial, Appellant presented his version of the events through his recorded statement that he gave to Trooper Johnston within an hour of the incident, as well as testimony from Appellant's wife and a family friend. In essence, Appellant argued that Complainant made up the allegations after stealing prescription narcotics from his home, and that injuries that the Appellant allegedly inflicted were the result of an earlier car accident.

In particular, Appellant told Trooper Johnston that he woke up to find Complainant in his home, yelling for Appellant's wife. When he told her that his wife was not home, Complainant became belligerent and began cursing at Appellant. After a few minutes, Appellant told her to leave the home, and not to return or call the house anymore. Appellant stated that he kicked Complainant out because she was on prescribed psychiatric and narcotic drugs.

---

[2] The 2006 incident was the subject of the Commonwealth's pre-trial oral Motion *in limine* seeking to admit testimony about the 2006 rape allegations. Attorney Rominger did not oppose the motion, and Complainant testified about the 2006 rape at trial without objection. She testified that she never reported the incident to law enforcement or anyone else because she did not want to hurt Appellant's wife.

Appellant denied attempting to assault Complainant on that day or any other day. In particular, Appellant denied the 2006 rape allegations, and Appellant's trial counsel, Attorney Rominger, even pointed out that Complainant continued to spend time alone with Appellant after the alleged incident in 2006.

Appellant's wife testified, *inter alia*, that she had not asked the Complainant to watch the cat. A friend of Appellant's and his wife testified also that he had been the one who Appellant's wife had asked to watch the cats on the date of the incident.

Appellant's wife further testified that after the date of the incident, she discovered that numerous narcotics were missing from her house and she believed that it was Complainant who had stolen them from her on the date of the incident. Trooper Johnston acknowledged that Appellant's wife filed a police report regarding the stolen narcotics, and Complainant admitted to "borrowing" prescription narcotics from Appellant's wife on prior occasions.

To explain the bruising on Complainant, Attorney Rominger presented evidence that a few weeks before the incident, Complainant was an unrestrained passenger in a car accident in which the vehicle rolled over. Attorney Rominger pointed out that, on the date of the accident, Complainant reported injuries that were similar to the injuries she complained of following the alleged attempted rape.

On May 1, 2012, the jury convicted Appellant of Criminal Attempt–Rape by Forcible Compulsion and Simple Assault. After his conviction and this Court's affirmance on July 25, 2013, Appellant, represented by new counsel, timely-filed a PCRA Petition and an amended Petition. On April 8, 2015, the Attorney General took over representation for the Commonwealth's case because the Commonwealth had charged Appellant's trial counsel with defrauding civil clients and misappropriating client funds.

The Honorable Thomas A. Placey presided over an evidentiary hearing on Appellant's PCRA Petition on June 25, 2015. Attorney Rominger testified at the hearing, as did Appellant. Appellant also called three character witnesses whom he avers trial counsel failed to adequately investigate or call at trial: Andrea Pierce, Trea Townes, and Kristen Swainston.

Following the evidentiary hearing, the PCRA court denied the Petition on August 13, 2015. Appellant timely appealed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following two issues:

1. Whether [t]rial [c]ounsel was ineffective for failure to call character witnesses.

2. Whether [t]rial [c]ounsel was ineffective for not objecting to, and even actually appearing to agree with, entry of testimony that [Appellant] had raped the alleged victim some years previously.

Appellant's Brief at 4 (reordered for ease of disposition).

- 5 -

When reviewing the denial of PCRA Petition, "we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citation omitted).

We begin our analysis with Appellant's averment that Attorney Rominger was ineffective for failing to call character witnesses to testify at trial to his reputation as peaceful and law abiding.[3]  Moreover, because we conclude that Appellant is entitled to relief on this claim, we need not address the merits of Appellant's second issue.

In analyzing claims of ineffective assistance of counsel, we presume that trial counsel was effective unless the PCRA petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999).  In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the

---

[3] As an initial matter, we note that the PCRA court misunderstood the nature of Appellant's argument.  The PCRA court concluded that Appellant was not entitled to PCRA relief because the PCRA court assumed that Appellant wanted to call character witnesses to establish that Appellant was truthful. Appellant, however, has consistently argued that he wanted to call character witnesses to establish that he is peaceful and law abiding.

ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

## **Prong 1: Arguable Merit**

This Court has "long recognized the importance of character evidence." ***In re R.D.***, 44 A.3d 657, 668 (Pa. Super. 2012). Character evidence "'is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence.'" ***Id.*** (quoting ***Commonwealth v. Luther***, 463 A.2d 1073, 1077 (Pa. Super. 1983)). Therefore, the "failure to present available character evidence may constitute ineffective assistance of counsel." ***Commonwealth v. Harris***, 785 A.2d 998, 1000 (Pa. Super. 2001).

In particular, our courts have recognized the importance of character evidence regarding a defendant's reputation as peaceful and law abiding, particularly in sexual assault crimes where the only evidence available is the testimony of the victim and the defendant. ***See Commonwealth v. Weiss***, 606 A.2d 439 (Pa. 1992).

The Court in ***Weiss*** explained that the reasoning behind finding that character evidence is crucial in cases with only the testimonial evidence of the victim is because "[e]vidence of good character is substantive, not mere

makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." *Id.* at 442. Therefore, in cases "where there are only two direct witnesses involved," the credibility of witnesses is of "paramount importance" and a claim of ineffective assistance of counsel for failing to call character witnesses meets the standard of "arguable merit." *Id.*; *see also Commonwealth v. Hull*, 982 A.2d 1020, 1022-23 (Pa. Super. 2009) (concluding that the Appellee's claim was of arguable merit where the only evidence at trial was the victim's testimony of the alleged acts and the testimony of the victim's brothers who alleged that they witnessed the sexual acts).

Turning to the instant case, the direct evidence was solely testimonial, and there were only two witnesses to the alleged events: Appellant and Complainant. The only physical evidence, photographs of bruising on Complainant, could arguably be explained by Appellant's theory that Complainant was injured in the roll-over car accident. Thus, like the cases discussed *supra*, the credibility of Appellant and Victim were of "paramount importance" in the instant case, and "character evidence [was] critical to the jury's determination of credibility." *Weiss*, 606 A.2d at 442. We conclude, therefore, that Appellant has presented an issue of arguable merit.

### Prong 2: No Reasonable Basis or Trial Strategy

In the instant case, we can detect no "reasonable trial strategy" for failing to call even a single character witness, particularly where (i) Attorney

Rominger failed to investigate at least three witnesses that Appellant identified; (ii) Attorney Rominger's testimony at the PCRA hearing evidenced a bias against character witnesses so that his decision not to call character witnesses was not an informed and intelligent decision; and (iii) Attorney Rominger was unaware of any "bad" character evidence that would be admissible on cross-examination other than a prior rape allegation that Attorney Rominger wished to have introduced into evidence in any event.

In general, where defense counsel's professed strategy was to rely solely on the credibility of the victim, this Court has questioned a defense attorney's strategy to not call character witnesses. *See Hull*, 982 A.2d at 1024 (noting that "[b]y portraying [the] [a]ppellee as a good man who would emphasize morals and discipline, counsel would have had an opportunity to enhance his strategy of proving that the [victim] had a motivation to lie about [her] accusations.").

In evaluating "reasonable trial strategy," this Court has explained that, in order for counsel's decision not to call character witnesses to be reasonable, "counsel would have had to investigate the witnesses, determine what they knew about [the defendant], and evaluate how that information would help or hurt his trial strategy." *Hull*, 982 A.2d at 1025 (citing *Weiss*, 606 A.2d at 441-42). We will only find that a reasonable trial strategy exists where trial counsel's decision was "a tactical one made after weighing all of the alternatives[.]" *Weiss*, 606 A.2d at 443. We will not find a reasonable

trial strategy exists when counsel "failed to interview and prepare potential character witnesses, and consult with his client thereto." **Weiss**, 606 A.2d at 443.

The undisputed testimony that Appellant presented at his PCRA hearing was that he repeatedly presented Attorney Rominger with a list of the names, addresses, employment information and contact information for a number of potential character witnesses that would testify to Appellant's reputation for being peaceful and law abiding. N.T., 6/25/15, at 13-14, 17. Those names included Andrea Pierce, Trea Townes, and Kristen Swainston. *Id.* at 13-14. This testimony was corroborated by Townes, who testified that she personally informed Attorney Rominger that she was available to testify at trial. *Id.* at 39. According to Pierce, Townes, and Swainston, Attorney Rominger never contacted them.

Attorney Rominger did not dispute this evidence at Appellant's PCRA hearing. Instead, Attorney Rominger had very little recollection of his trial preparations regarding character witnesses and could not name anyone with whom he spoke. *Id.* at 67-69. To the extent that he remembered anything, he testified that he spoke to a few potential character witnesses whom he saw sitting in the courtroom before the trial started. *Id.* at 69.

Although he could not provide any details about the conversations that he had with potential witnesses, he testified that he "[didn't] see or recall a

character witness who was strong enough or on point enough" to testify. *Id.*

We agree with Appellant that Attorney Rominger failed to investigate and call character witnesses and such failure was not the result of reasonable trial strategy. At best, Attorney Rominger vaguely recalls that he briefly and randomly interviewed whomever happened to be in the courtroom. When the individuals he spoke to failed to immediately present testimony in an admissible form, he rejected them as potential witnesses. In short, he did not make an informed and reasoned decision not to call the witnesses Appellant suggested; he instead "failed to interview and prepare potential character witnesses." *Weiss*, 606 A.2d at 443.

Moreover, this failure to interview and prepare witnesses was not the result of reasonable trial strategy. We will not find a reasonable trial strategy where, as here, trial counsel acts out of a general bias against certain kinds of character witnesses. *Id.* (finding no reasonable trial strategy based on trial counsel's opinion that juries do not find credible family member who testify as character witnesses). Attorney Rominger's testimony at the PCRA hearing focused not on this particular case, but on the fact that generally, "in most criminal cases," the proposed character witnesses he speaks to want to testify to specific instances of good conduct

and need a lot of coaching.[4]   N.T. at 68.   His testimony that "generally"

potential character witnesses cannot present valuable, admissible testimony,

coupled with his professed disinterest in trying to prepare the witnesses he

spoke to in the instant case, smacks of the prejudice towards character

witnesses generally that our Supreme Court rejected as a reasonable trial

strategy in *Weiss*, 606 A.2d at 443.

Nor do we find plausible Attorney Rominger's explanation that, even if

he had been presented with viable character witnesses, he would not have

called them anyway because he did not want the Commonwealth to be able

to cross-examine them about the alleged rape in 2006.  *Id.* at 69.

Trial counsel invoked a similar argument in *Hull*, stating that he did

not call character witnesses because he thought the Commonwealth would

cross-examine them about the details of the offense at issue, and he wished

to avoid the cumulative effect on the jury of repeating the allegations

against his client.   There, as here, we conclude that no reasonable trial

strategy exists where the "bad character evidence" on cross-examination is

simply a restatement of evidence already adduced at trial.  *Hull*, 982 A.2d

at 1024 (finding no reasonable trial strategy where the defendant had no

criminal record, where none of the witnesses told trial counsel they had

---

[4] He did acknowledge that "[i]f anyone came in [to the PCRA hearing] and [presented admissible character evidence] it may be that [he] didn't talk to them or it may be that [he] didn't understand how to coach them adequately."  N.T., 6/25/15, at 68.

additional bad character evidence, and where trial counsel therefore "had no reasonable expectation that any of the witnesses would have negative evidence against [the defendant].").

In the instant case, the jury heard about the 2006 rape allegation in the Commonwealth's case in chief. In fact, Attorney Rominger and the Commonwealth have both argued that Attorney Rominger **wanted** the 2006 rape accusation to be introduced into evidence so that he could use it to attack Complainant's credibility.[5] N.T. at 66-67; Appellee's Brief at 12-19. Attorney Rominger cannot have it both ways. Either the 2006 rape allegation was so prejudicial to Appellant that Attorney Rominger should have fought its admission or it was so helpful to his strategy that it cannot now justify excluding character witnesses. Given that the trial court admitted the "bad character evidence" on other grounds, the 2006 allegation cannot justify Attorney Rominger's refusal to investigate or present character witnesses. *See Van Horn*, 797 A.2d at 988; *Hull*, 982 A.2d at 1024.

Accordingly, we conclude that Appellant has met his burden under the second prong of our analysis, and has shown that Attorney Rominger did not have a reasonable trial strategy for not calling or investigating character witnesses.

---

[5] These arguments were made in response to Appellant's second allegation of error, that trial counsel was ineffective for failing to object to the admission of the 2006 rape allegations at trial.

## Prong 3: Prejudice to Appellant

Finally, we must determine whether Appellant was prejudiced by Attorney Rominger's failure to investigate and present character witnesses.

This Court previously held that:

To satisfy the prejudice prong of [the ineffective assistance of counsel] test when raising a claim of ineffectiveness for the failure to call a potential witness at trial, our Supreme Court has instructed that the PCRA petitioner must establish that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Wantz***, 84 A.3d 324, 331 (Pa. Super. 2014) (citation omitted).

In ***Weiss, supra***, our Supreme Court reversed a conviction on a finding of prejudice where the evidence at trial "boiled down to [the defendant's] word against the word of his [victim]." ***Weiss***, 606 A.2d at 443. In those circumstances, "there was no overwhelming evidence of guilt . . . [the] credibility of the witnesses was of paramount importance, and counsel's error not to employ character witnesses, familial or otherwise, undermined [the] appellant's chances of instilling reasonable doubt in the minds of the jury and resulted in prejudice to [the appellant]." ***Id. See also Hull***, 982 A.2d at 1026-27 (finding prejudice because "[e]vidence of [the defendant's] good character . . . would have bolstered his defense" and

made the jury "more likely to consider his theory that the [victim] falsified the allegations.")

In the instant case, Pierce testified at the PCRA hearing that she told Appellant she was ready, willing, and able to testify as a character witness at Appellant's trial, and Appellant testified that he notified Attorney Rominger. N.T. at 28. Pierce testified that: (i) she had previously worked and attended school with Appellant and known him since 1998; (ii) she had spoken with coworkers and classmates about Appellant in the years she had known him; and (iii) Appellant had a reputation among coworkers and classmates for being upstanding, non-violent, and law abiding. *Id.* at 29-30.

Townes also testified that she was ready, willing, and able to testify as a character witness at Appellant's trial. *Id.* at 38. According to Townes, she told Attorney Rominger that she was available to testify at trial, but he did not respond. *Id.* at 39. Townes testified that: (i) she had known Appellant since 2009, when they attended school together; (ii) she had spoken to classmates about Appellant; and (iii) she knew Appellant to have a reputation for being "quiet, law abiding, [and] peaceful." *Id.* at 35-37.

Swainston confirmed that she had told Appellant she was ready, willing, and able to testify as a character witness at Appellant's trial, and Appellant testified that he notified Attorney Rominger. *Id.* at 52. Swainston testified that: (i) she met Appellant at school; (ii) she had heard classmates

and family members discuss Appellant; and (iii) she "never heard anybody say he was not a law abiding citizen." *Id.* at 50-51.

It is clear that Attorney Rominger's failure to adequately investigate or call character witnesses deprived Appellant of at least two witnesses who could have presented positive, relevant evidence of Appellant's reputation.[6]

The instant case "boiled down" to Complainant's word against Appellant. Under these facts, evidence of Appellant's good character "was of paramount importance," and would have been beneficial to Appellant's defense. *Weiss*, 606 A.2d at 443. Accordingly, Appellant was prejudiced by Attorney Rominger's failure to investigate and present character witnesses at trial. Therefore, the record does not support the PCRA court's determination that Appellant's character was not at issue at trial.

Based on the foregoing, and after our thorough review of the record, we conclude that Appellant is entitled to relief on his claim that trial counsel was ineffective for failing to call character witnesses. Because this issue is dispositive, we need not address his other claim.

---

[6] Arguably, Swainston's testimony that she never heard anything bad about Appellant would have been insufficient evidence of a positive reputation for being law abiding. Nonetheless, her testimony did support Appellant's allegation that he gave Attorney Rominger the names of several potential witnesses with whom Attorney Rominger failed to investigate or speak.

Order reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2016