**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Rick Elwood HULL, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 2009.

Filed Oct. 16, 2009.

Jack R. Heneks, Jr., Assistant District Attorney, Uniontown, for Commonwealth, appellant.

Paul R. Gettleman, Portersville, for appellee.

BEFORE: STEVENS, DONOHUE, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

¶ 1 The Commonwealth of Pennsylvania files this appeal from the order entered in the Fayette County Court of Common Pleas, which granted relief to Appellee, Rick Elwood Hull, based on his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We hold that counsel lacked a reasonable basis for failing to call good character witnesses based on his overall trial strategy to show that the children were lying. Specifically, we hold that trial counsel may not state a broad concern that opposing counsel might introduce bad character evidence on cross-examination without having conducted any kind of investigation to determine if, in fact, there exists bad-character evidence. Accordingly, we affirm.

---

* Former Justice specially assigned to the Superior Court.

1. 42 Pa.C.S. §§ 9541–9546.

¶ 2 Appellee was convicted by a jury in 2004 of involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, indecent exposure, and corruption of minors, involving allegations of sexual acts performed on his adopted daughter. The only evidence presented at trial was the recollection of witnesses, including those of the victim and her brother, of the events. The victim's brothers, who Appellee also adopted, testified that Appellee and his wife regularly struck them. Appellee was sentenced to an aggregate sentence of five to fifteen years' imprisonment. The trial court further required Appellee to comply with the lifetime registration requirements of 42 Pa.C.S. § 9795.1(b)(2) on the conviction for involuntary deviate sexual intercourse. This Court affirmed his judgment of sentence. *Commonwealth v. Hull,* 902 A.2d 977 (Pa.Super.2006) (unpublished memorandum). Appellee did not petition for allowance of appeal with our Supreme Court.

¶ 3 Appellee filed a PCRA petition in 2007, alleging ineffectiveness of counsel due to failure to present character witnesses. It is not contested that there were available witnesses who were willing and able to testify as to Appellee's good character at trial. The PCRA court granted relief, finding counsel ineffective based on his failure to call character witnesses. The PCRA court therefore granted a new trial. The Commonwealth timely appealed.

¶ 4 The Commonwealth raises two issues:

> Whether the court erred in granting Appellee a new trial based on trial counsel's failure to introduce testimony of various character witnesses produced by the defendant?

> Whether the evidence at trial was so overwhelming that the failure to introduce such testimony was harmless error?

Commonwealth's Brief at 3.

¶ 5 "In addressing the grant or denial of post-conviction relief, we consider whether the PCRA court's conclusions are supported by record evidence and are free of legal error." *Commonwealth v. Sattazahn,* 597 Pa. 648, 669, 952 A.2d 640, 652 (2008). "We must accord great deference to the findings of the PCRA court, and such findings will not be disturbed unless they have no support in the record." *Commonwealth v. Scassera,* 965 A.2d 247, 249 (Pa.Super.2009).

¶ 6 The Commonwealth argues that the PCRA court erred in finding no reasonable explanation for trial counsel's approach. *See* PCRA Ct. Op., filed 7/15/08, at 9. The Commonwealth contends it was a calculated decision by counsel not to call character witnesses. The Commonwealth finds reasonable trial counsel's conclusion that Appellee's most successful strategy was to paint a picture of Appellee's house as a miserable place to live, motivating the children to fabricate a story in order to facilitate their removal from the house. The Commonwealth also argues the PCRA court erred when it found that counsel's ineffectiveness led to actual prejudice. *See* PCRA Ct. Op. at 12. The Commonwealth submits that the outcome of the proceedings would not have been any different if character evidence had been introduced. We disagree.

¶ 7 In order to succeed on a claim of ineffective assistance of counsel:

> The petitioner in such matters is required to make the following showing in order to succeed with such a claim: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is

a reasonable probability that the outcome of the proceedings would have been different. The failure to satisfy any prong of this test will cause the entire claim to fail. Finally, counsel is presumed to be effective, and petitioner has the burden of proving otherwise. *Commonwealth v. Harris,* 972 A.2d 1196, 1203 (Pa.Super.2009) (citations omitted). "Evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all the evidence presented in the case on the general issue of guilt or innocence." *Commonwealth v. Harris,* 785 A.2d 998, 1000 (Pa.Super.2001) (citing *Commonwealth v. Luther,* 317 Pa.Super. 41, 463 A.2d 1073, 1077 (1983)).

¶ 8 Instantly, the PCRA court acted within its discretion when it decided the underlying claim had merit:

In this case, no one other than G.H. testified as to the acts upon which the charges were based and there were no physical findings to corroborate the acts. Therefore, the credibility of the witnesses was of paramount importance, and character evidence is critical to a jury's determination of credibility. *Commonwealth v. Weiss,* 530 Pa. 1, 606 A.2d 439 (1992). The failure to present available character evidence may constitute ineffective assistance of counsel. *Commonwealth v. Harris,* 785 A.2d 998 (Pa.Super.2001). The defendant's claim is, therefore, not without merit.

PCRA Ct. Op. at 8. The Commonwealth does not contest this aspect of the PCRA court's determination.

¶ 9 Next, "we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." *Weiss,* 530 Pa. at 5–6, 606 A.2d at 441–42; *see also Commonwealth v. Blount,* 538 Pa. 156, 170–71, 647 A.2d 199, 207 (1994) ("[D]efense counsel's decision was not a tactical one made after weighing all of the alternatives, but was based on the fact that he had failed to interview and prepare potential character witnesses, and consult with his client thereto. These failures by counsel were precipitated by defense counsel's perception that familial character witnesses were *per se* worthless." (quotation omitted)). "The test is **not** whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." *Blount,* 538 Pa. at 171, 647 A.2d at 207 (quoting *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967)). Counsel has a reasonable, strategic basis for not calling character witnesses if he has a legitimate reason to believe that the Commonwealth would cross-examine the witnesses concerning bad-character evidence. *See Commonwealth v. Van Horn,* 797 A.2d 983, 988 (Pa.Super.2002) (finding counsel's strategy not to call client's relatives as character witnesses reasonable because of client's prior convictions of burglary and statutory rape) (citing *Commonwealth v. Morales,* 549 Pa. 400, 701 A.2d 516 (1997)).

¶ 10 It is undisputed that counsel's stated strategy was to show that "these children were lying and because they weren't happy there, they wanted to go home to Lancaster where they had a mother who, I guess, essentially let them do whatever they wanted to do, run the streets, and that they wanted to go home." N.T. PCRA Hearing, 5/16/07, at 18. If counsel

had presented character witnesses, such testimony would have been consistent with this strategy because it could have made Appellee's story, that the children were making up these accusations, more believable. By portraying Appellee as a good man who would emphasize morals and discipline, counsel would have had an opportunity to enhance his strategy of proving that the children had a motivation to lie about their accusations. Counsel, however, chose not to present these character witnesses; accordingly, we will review whether counsel had reason to believe that any negative consequences would outweigh this positive aspect.

¶ 11 Initially, counsel justified his failure to call character witnesses by claiming that their testimony was irrelevant because they had no information about the case, a justification which counsel, on cross-examination, admitted was erroneous:

Q. What's the purpose of calling character witnesses?

A. The purpose of calling character witnesses?

Q. Yes, the purpose of calling character witnesses.

A. Typically, to testify as to an individual's reputation in the community.

Q. So it wouldn't make any difference whether they knew anything about the case, would it?

A. No.

Q. You said that was one of your concerns, that they didn't have any information about the case, you remember saying that, don't you?

A. Yes.

Q. It has absolutely nothing to do with a good character witness, does it?

A. No.

*Id.* at 26–27.

¶ 12 Counsel's other justification, then, was his attempt to avoid allowing the Com-

monwealth to cross-examine Appellee on potential character issues:

Q. Did you have any concerns about calling character witnesses at that time?

A. Some.

Q. And what were they?

A. That it would open the door to character and allow other adverse character witnesses to be called.

Q. And what did you, and again, you're looking at this from a trial standpoint, what did you think that might happen if those other witnesses were called, the negative character witnesses?

A. That they would adversely impact the jury and their decision in the matter.

Q. And what was your specific concern about what they would testify about?

**A. I did not have any specific concerns at that point.**

\* \* \*

Q. Did you have any concerns about this issue about the children being disciplined and/or being beaten and/or being called names might be something that the community might have been aware of?

A. Yes.

Q. And you were worried about that then coming up on cross-examination?

A. Yes.

*Id.* at 24–25 (emphasis added). Counsel, therefore, established he was initially afraid that, upon cross-examination regarding Appellee's character, the Commonwealth could introduce evidence of Appellee's reputation for abusing children. During cross-examination at the PCRA hearing, however, Appellee inquired into the basis of counsel's concern:

Q. You had no evidence whatsoever that anybody was going to come into court and testify against his bad charac-

ter because **as far as you know, there was no bad character from character witnesses, isn't that right?**

A. **That's correct.**

Q. But you never bothered investigating that. You left it up to your client to tell you, basically, go get good character witnesses, right?

A. No. My client provided me with names.

Q. And what did you do after you got the names, did you talk to any of these people?

A. Yes, I talked to several of them.

\* \* \*

Q. Let me ask you this. Until somebody puts in a good character, their character shouldn't be attacked, right?

A. Right.

Q. Throughout this entire trial, his character was attacked by these children when he never even raised his good character, isn't that right?

A. Not through the entire trial, no.

Q. A good portion of it.

A. At times.

Q. Right. **So was there any particular trial strategy on your part not to call these good character witnesses?**

A. **No.**

*Id.* at 28–29 (emphases added).

¶ 13 We agree with the PCRA court's assessment of counsel's testimony:

During his testimony, [counsel] appeared to have a lack of understanding with regard to the importance of reputation testimony. He appeared to be unaware that evidence of good character in and of itself could raise a reasonable doubt of the defendant's guilt and appeared unfamiliar with the Court's obligation to instruct the jury on the significance of such evidence had reputation

testimony been introduced. It was clear from the testimony of defense counsel that he did not understand the significance and importance of reputation evidence.

PCRA Ct. Op. at 6. We agree with the PCRA court that counsel did not understand what role character evidence should have played in his overall trial strategy. Appellee had no criminal record, and no witness indicated that he or she had any bad-character evidence against Appellee. Counsel, therefore, had no reasonable expectation that any of the witnesses would have negative evidence against Appellee. In fact, it appears counsel's concern was a broad-based fear, and was not based on any particular concern he learned of in the course of investigating the character witnesses.

¶ 14 For counsel's decision to be reasonable, counsel would have had to investigate the witnesses, determine what they knew about Appellee, and evaluate how that information would help or hurt his trial strategy. *See Weiss,* 530 Pa. at 5–6, 606 A.2d at 441–42. Counsel's assertion instead gave the impression that he was afraid a more thorough investigation by the Commonwealth would uncover negative information about Appellee that counsel himself could not uncover.

¶ 15 In *Weiss,* our Supreme Court addressed trial counsel's decision not to have the defendant's parents-in-law, employer, and co-worker testify as to the defendant's good character:

In a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility. Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a

reasonable doubt of guilt and, thus, require a verdict of not guilty. . . .

\* \* \*

Trial counsel's failure to use appellant's numerous relatives as character witnesses was based upon his perception of familial character evidence. He testified that, "[a]s a policy matter, I don't ever recall ever putting on character evidence of family members. I think the jury just thinks it's garbage." Counsel admits that he never discussed with appellant the possibility of presenting character evidence from appellant's family. Counsel's preconceived notions about familial character evidence led to his failure to even interview appellant's relatives, and precluded him from assessing their credibility. Although familial character witnesses generally lack the credibility of unbiased non-familial witnesses, an attitude that they are *per se* worthless, is sufficient evidence of counsel's competency.

**In light of the overwhelming need for character evidence in a case such as this, counsel's limited investigation into the quantity and/or quality of potential character witnesses on behalf of appellant, and counsel's prejudice toward familial witnesses, we find no reasonable basis to support trial counsel's decision not to call *any* character witnesses.**

*Id.* at 6, 8, 606 A.2d at 442, 443 (emphasis added) (citations omitted).

¶ 16 Similarly, in the instant matter, we cannot accept counsel's decision not to conduct a more thorough investigation as a reasonable strategy. As our Supreme Court stated in *Weiss*, counsel should have investigated the character witnesses to determine their value on the stand. *See id.* Counsel did not cull his beliefs, either that the character witnesses' testi-mony would have no value because they had no specific knowledge of the case, or that counsel worried about the potential of the Commonwealth to cross-examine them on Appellee's bad character, through proper investigation. *See id.* In particular, because the charges against Appellee were based solely on the accusations by the alleged victim and her brothers, credibility was the primary factor in the jury's determination. *See id.* at 6, 606 A.2d at 442 (observing that when only two direct witnesses are involved, credibility "is of paramount importance"). Indeed, counsel admitted that his overall strategy was to question the children's credibility by formulating in the jurors' minds a motive for the children to fabricate their allegations against Appellee and his wife.

¶ 17 We therefore turn to the third prong of the ineffective assistance of counsel analysis. In order to determine whether there is a reasonable probability that effective assistance of counsel would have led to a different outcome, Appellee "must demonstrate that the alternative not selected by counsel offered a substantially greater chance of success than the tactic chosen." *Id.* at 8, 606 A.2d at 443. "To properly determine whether prejudice resulted from the quality of counsel's representation, we must focus on counsel's overall trial strategy and view his performance as a whole." *Id.* at 8–9, 606 A.2d at 443.

¶ 18 As noted above, counsel's overall trial strategy was to convince the jury that the children had a motive to fabricate their allegations against Appellee. Evidence of Appellee's good character, particularly in the absence of any bad-character evidence outside of the children's testimony, would have bolstered his defense. *See id.* at 6, 606 A.2d at 442.

¶ 19 We must also consider, however, the Commonwealth's assertion that even if Appellee presented character witnesses,

the evidence against Appellee was so overwhelming that the outcome would not have been different. The other available evidence cited by the Commonwealth includes the competing oral accounts of the witnesses. The Commonwealth asserts that the victim's brother's testimony was "extremely uncommon in child sexual assault cases as most, if not all, cases rely only on the testimony of the victim." Commonwealth's Brief at 11. The Commonwealth claims that the brother's testimony was "extensive" and "undermines" the PCRA court's finding of lack of overwhelming evidence. *Id.* at 12. We disagree.

¶ 20 Our review of the testimony of the victim's brother reveals that it was too vague and uncertain to constitute overwhelming evidence, especially since the weight given to it by the jury still depended on his credibility. On one of the instances in question, the brother observed Appellee kneeling under the pool, but did not see the victim. N.T. Trial, 5/6/04, at 84. On another, the brother testified he watched Appellee put his hand under the victim's nightgown. *See id.* at 81. On a third occasion, the brother claimed that he witnessed Appellee kneeling in front of the victim "trying to touch her vagina" while the victim pushed him away. *Id.* at 83. At one point in his testimony, the brother admitted that when he confronted the victim about one of these incidents, she denied it was true. *See id.* at 85.

¶ 21 Importantly, the character evidence at issue could cast doubt on the brother's testimony since that evidence speaks not only to the victim's credibility, but also her brother's, whose testimony the Commonwealth claims renders the evidence overwhelming. Allegedly, the victim and her brother would share the same motive; thus, by bolstering Appellee's credibility, the jury would have been more likely to consider his theory that the children falsified the allegations. Counsel's inaction, however, caused the jury to weigh only Appellee's and his wife's testimony against the children's.[2] Since the PCRA court was able to observe the atmosphere at trial, we need only determine whether the PCRA court's observations are supported by the record, and whether those observations support the result reached by the court. *See Sattazahn,* 597 Pa. at 669, 952 A.2d 640. We agree the record supports the PCRA court's findings and conclude that the failure to present Appellee's desired character witnesses prejudiced his defense.

¶ 22 We accordingly hold that counsel lacked a reasonable basis not to call good-character witnesses based on his overall trial strategy of showing that the children had a motive to lie about their allegations against Appellee. Counsel may not justify his failure to present good-character evidence by citing a broad concern that opposing counsel might introduce bad-character evidence on cross-examination without having investigated whether that concern is based in reality.[3] We therefore

---

2. Appellee also presented alibi evidence from his brother-in-law, who testified that when he left the house, the children were in bed on one of the nights in question, but he could not testify as to whether the victim may have gotten out of bed. Appellee's sister testified as to the difficulties Appellee and his wife were having with the children and her doubts about the victim's accusations.

3. We are mindful of the Commonwealth's concern that "[t]he Commonwealth now faces

the prospect of a re-trial with the necessity of presenting the same child to testify about incidents now occurring more than six (6) to seven (7) years ago, forcing the child to relive and relate sexual incidents which it can be argued that she ha[s] no interest in recalling." Commonwealth's Brief at 11. We cannot agree with the Commonwealth, however, that "[t]o now allow the Appellee to obtain a new trial based on whether character witnesses who had no knowledge of any of these events

find no error in the PCRA court's decision to order a new trial.

¶ 23 Order affirmed.

¶ 24 Judge STEVENS files a Dissenting Opinion.

## DISSENTING OPINION BY STEVENS, J.:

¶ 1 I conclude trial counsel provided a reasonable strategic basis for not calling character witnesses to testify on behalf of Appellee, and Appellee failed to show that, but for counsel's failure to call such character witnesses, there is a reasonable probability the outcome of the jury trial would have been different. Therefore, I find that Appellee failed to meet his burden of proving trial counsel was ineffective in failing to call character witnesses, and accordingly, I would reverse the PCRA court's order awarding Appellee a new trial. As such, I respectfully dissent.

¶ 2 As the Majority indicates, in order to succeed on a claim of ineffective assistance of counsel, the petitioner must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Harris*, 972 A.2d 1196 (Pa.Super.2009).

¶ 3 In the case *sub judice*, the Commonwealth contends the PCRA court erred in concluding trial counsel had no reasonable strategic basis for choosing not to call witnesses to testify as to Appellee's character of being a peaceful and law-abiding citizen.

¶ 4 At the PCRA hearing, trial counsel explained that his trial strategy was to prove that the victim and her brother, both of whom were adopted by Appellee and his wife, were lying about Appellee's sexual abuse of the victim.[1] N.T. 5/16/07 at 17–18. To this end, trial counsel wanted to show that the children were not happy living with Appellee and his wife, who were strict disciplinarians, and the children wanted to return to Lancaster to live with their mother, who allowed them to "run the streets." N.T. 5/16/07 at 17–18, 30–31. However, during trial, the children testified that Appellee's and his wife's actions went beyond acceptable disciplining; that is, Appellee and his wife hit the children with their fists and a ski pole and called them racial names. N.T. 5/16/07 at 29, 32. In order to redeem his client, counsel put Appellee and his wife on the stand and they both denied the physical abuse and racial name calling had occurred. N.T. 5/16/07 at 21; N.T. 5/5/04 (jury trial) at 151–152, 161–163; N.T. 5/7/04 (jury trial) at 187–189. Trial counsel testified that he did not call character witnesses to testify as to Appellee's character as a "peaceful and law-abiding man" because he believed the witnesses knew about the beatings and name-calling. Specifically, trial counsel testified that he talked to several of the character witnesses, N.T. 5/16/07 at 28, and formed the following opinion:

Q: Did you have any concerns about this issue about the children being disciplined and/or being beaten and/or being

should have been called by defense counsel is more than sad—it is an inappropriate remedy." *Id.* As we have determined, the value of the character witnesses lies not in what they witnessed, but in directly supporting Appellee's defense and indirectly refuting the children's allegations. Accordingly, permitting Appellee the opportunity to assert a colorable

defense properly constitutes the only fair remedy in this case.

1. The victim has two brothers; however, there is no indication that her brother, E.H., witnessed any sexual incidents between the victim and Appellee. The testimony of the victim's other brother, J.H., is summarized *infra*.

called names might be something that the community might have been aware of?

A: Yes.

Q: and you were worried about that then coming up on cross-examination?

A: Yes.

N.T. 5/16/07 at 25.

¶ 5 Moreover, specifically with regard to trial counsel's interview of Appellee's sister and brother-in-law, trial counsel testified as follows:

Q: And what did you do after you got the names, did you talk to any of these people?

A: Yes, I talked to several of them.

Q: Just point out the ones that you talked to.

A: At various times I talked to at least Mr. Hull's sister and her husband.

Q: Okay, did they tell you they would be willing to come into court and say that they knew him and they knew other people in the community that they knew him and amongst the people that they knew him he has a reputation for being peaceful and law-abiding?

A: No, they did not. That's not what they told me.

N.T. 5/16/07 at 28–29.

¶ 6 As this Court has stated, "[i]n evaluating the second prong, whether counsel had a reasonable basis for his action, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Fitzgerald*, 979 A.2d 908, 911 (Pa.Super.2009) (quotation and quotation marks omitted).

¶ 7 I conclude trial counsel has set forth a reasonable basis for not calling character witnesses, and therefore, counsel was not ineffective. Thus, I would reverse the PCRA court's order on this basis.

¶ 8 Moreover, I agree with the Commonwealth's contention that there was overwhelming testimony concerning the repeated sexual assault of the victim such that there is not a reasonable probability that the outcome of the jury trial would have been different had character testimony been introduced. For instance, G.H., the victim, testified in detail about a night when she was wearing Santa Claus pajamas and Appellee tried to pull down her pants and touch her private parts while she was in the living room. N.T. 5/5/04 at 24–28. During another night, while she was sitting on Appellee's lap in a rocking chair, Appellee put his hand under her nightgown and touched her private part. N.T. 5/5/04 at 29. One time, while she was in her bedroom and wearing shorts with a purple shirt, Appellee took her clothes off and put his tongue on her private part while she was standing. N.T. 5/5/04 at 31–32. Another time, as they were dressing for church, Appellee tried to touch the victim and she began to cry. N.T. 5/5/04 at 34. Appellee told her to get on her knees and pray to make Appellee "a good boy." N.T. 5/5/04 at 34. Appellee told her the devil makes him do it. N.T. 5/5/04 at 34. Another time, while Appellee was under the swimming pool dock cleaning the pool's filter, the victim went under the dock and Appellee pulled down his zipper exposing his private part. N.T. 5/5/04 at 36. Appellee told her to pull down her shorts and he placed his private part on her "butt." N.T. 5/5/04 at 37. During this time, Appellee's wife was making dinner and her brothers had been prohibited from swimming in the pool. N.T. 5/5/04 at 35. Another time, while in the attic, Appellee exposed his private part and told the victim to put her hand on it "back and forth." N.T. 5/5/04 at 38. The victim did this until "white stuff came out" and Appellee put his private part back into his pants. N.T. 5/5/04 at 38. The victim offered to get

Appellee a tissue and he said, "No." N.T. 5/5/04 at 39. Another time, Appellee told the victim she could put wood on the furnace and took her into the basement. N.T. 5/5/04 at 39. The victim expressed excitement about being able to put the wood in the furnace and Appellee told her "Shh, be quiet." N.T. 5/5/04 at 39. Appellee pulled his zipper down, exposed his private part, and put it on the victim's "butt." N.T. 5/5/04 at 39–40. The victim indicated that her brother, J.H., asked her if Appellee "did anything to [her.]" N.T. 5/5/04 at 43. The victim told J.H. "yes," and J.H. said someone would be coming to the house to help. N.T. 5/5/04 at 43–44.

¶ 9 In addition, contrary to the PCRA court's conclusion that "no one other than G.H. testified as to the acts upon which the charges were based," PCRA Court Opinion filed 7/15/08 at 8, I note that there was another witness to at least some of the repeated sexual assaults. The victim's brother, J.H., who was fourteen at the time of trial, testified that, during an evening in February of 2003, Appellee told him and his brother to go to bed but permitted the victim to stay in the living room. N.T. 5/5/04 at 79–80. J.H. was sitting up in his bed and could see into the living room, where the victim was sitting on Appellee's lap in a rocking chair. N.T. 5/5/04 at 80–81. J.H. saw Appellee put his hand underneath the victim's nightgown. N.T. 5/5/04 at 81. During a different night, J.H. was in bed and he heard Appellee tell the victim it was time for her to go to bed. N.T. 5/5/04 at 81–82. J.H. heard Appellee quietly call the victim back out to the living room and observed as he pulled down her pajamas and tried to touch her vagina. N.T. 5/5/04 at 82. Appellee was on his knees and the victim was standing. N.T. 5/5/04 at 82. J.H. told the school counselor what he had seen and, after the victim confirmed Appellee had been touching her, he told her that someone would be coming to help. N.T. 5/5/04 at 85–86.

¶ 10 The victim's other brother, E.H., testified that he never witnessed any sexual incidents between the victim and Appellee; however, he was present when the siblings discussed the sexual abuse and J.H. indicated someone would be coming to help. N.T. 5/5/04 at 103.

¶ 11 Based on the aforementioned, I conclude Appellee failed to prove the prejudice prong required for an ineffective assistance of counsel claim and this is an additional reason why counsel was not ineffective.

¶ 12 In summary, I conclude trial counsel has set forth a reasonable basis for not calling character witnesses and Appellee has failed to demonstrate that, but for counsel's failure to call character witnesses, there is a reasonable probability that the outcome of the jury trial would have been different. *See Harris, supra.* Therefore, I conclude counsel was not ineffective, and I would reverse the PCRA court's order on this basis. Thus, I respectfully dissent.