J-S41041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : : | |
| v. | : : | |
| RICHARD SOTO, | : : : | |
| Appellant | : | No. 170 MDA 2019 |

Appeal from the PCRA Order Entered December 31, 2018
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0002599-2014

BEFORE:   LAZARUS, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 13, 2019**

Richard Soto (Appellant) appeals from the order entered December 31, 2018, dismissing his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Upon review, we reverse the order and remand for proceedings consistent with this memorandum.

The record reveals the following factual and procedural history.  In late October 2013, M.M. was an eight-year-old, second-grade student at elementary school.  A few days prior to her class's Halloween party, M.M.'s learning support teacher,[1] Diane Higgins (Higgins), had the students working on a following-directions activity by drawing a Frankenstein-type picture.

---

[1] M.M. had a learning support teacher because she has developmental delays. She had been in learning support classrooms since kindergarten.

* Retired Senior Judge assigned to the Superior Court.

Higgins observed M.M.'s picture, which appeared to depict Frankenstein having a black penis, outlined in blue, "with a whole bunch of yellow stuff coming out of it at the end." N.T., 11/4/2015, at 50. Higgins asked M.M. to step into the hallway to have a conversation, and then Higgins reached out to the school's guidance counselor, Anna Smith (Smith), for further assistance.

Smith spoke with M.M. the following afternoon. At first, M.M. told Smith the picture was "a pipe that goes over the toilet that has pee that comes out of it." *Id*. at 79. After assuring M.M. that she was not in trouble, M.M. told Smith that "[Appellant[2]] puts his winky in [M.M.'s] mother and puts it in [M.M.]." *Id*. at 80. M.M. confirmed that "winky" referred to Appellant's penis and that the action described was "sex." *Id*. M.M. further explained sex "was the winky in the parties." *Id*. M.M. clarified that the "parties" was her "vagina" and that sex "was the penis in the vagina." *Id*. at 81. M.M. then told Smith that "[Appellant] put his winky in her parties,… in her butt, and in her mouth. [M.M.] explained [to Smith] that [Appellant] put it in her mouth, and [M.M.] gestured with her hands the movement." *Id*. at 81. M.M. told Smith that this occurred in her bedroom, while her brother and sister were downstairs. M.M. also told Smith that she had told Mother about the abuse previously, but Mother "didn't believe [M.M.] … then [Mother] whooped [M.M.]" *Id*. at 83.

---

[2] Appellant is the live-in boyfriend of M.M.'s mother, Siamphone Sok (Mother). Appellant and Mother had been living together since 2011. Also residing in the home were M.M.'s two younger siblings.

At that point, Smith called ChildLine[3] and "the local agency." *Id*. at 84. Caseworker Ashley Johnson (Johnson) of Dauphin County Children and Youth received the ChildLine report regarding M.M. Johnson informed local police, and then she and another caseworker went immediately to M.M.'s home to investigate. When they arrived, Mother was the only one home. They explained to Mother that M.M. made "sexual abuse allegations against" Appellant. N.T., 11/5/2015, at 111. They also told Mother that she was a perpetrator "by omission for not intervening when she was told that this was going on." *Id*. They further informed Mother of her right to an attorney. According to Johnson, Mother "immediately became defensive [and] started talking about how it couldn't have happened." *Id*. Mother told Johnson that M.M. "makes up stories and that [Mother] would laugh things like this off." *Id*. at 112. Because M.M. was residing with both Appellant and Mother, M.M. and her siblings were removed from the home.

Middletown Police Department Detective Mark Hovan was contacted by Johnson about M.M.'s abuse. He set up an interview for M.M. at the Children's Resource Center (CRC). Dr. Paula George, a child abuse pediatrician, examined M.M. on November 4, 2013. Dr. George did not find "any physical evidence of vaginal, anal, or oral penetration," but indicated that such lack of

---

[3] "The ChildLine Abuse Registry is what mandated reporters typically use in order to talk about abuse or neglect and report it to them. The ChildLine Abuse Registry then distributes those reports to the appropriate counties in which the incidents occurred." N.T., 11/5/2015, at 107.

findings are typical for children who have been sexually abused.  According to Dr. George, there is "overwhelming evidence that children who report sexual abuse only rarely have medical findings." *Id*. at 202.  M.M. was also interviewed at the CRC that day.

Detective Hovan watched the interview of M.M. at the CRC, and determined that the next step in the investigation was to interview Appellant and Mother immediately.  In addition, Detective Hovan applied for and executed a search warrant for Appellant's home.  No blood or seminal material was detected on M.M.'s bedding.  In addition, no useful information was found on Appellant's phone.

Detective Hovan conducted separate interviews of Mother and Appellant that day.  According to Detective Hovan, Mother was not at all concerned for M.M., but was very concerned about Appellant.  Detective Hovan next interviewed Appellant.  According to Detective Hovan, Appellant was very calm and denied having committed these acts.[4]  At the close of the interviews, both Appellant and Mother[5] were arrested.

---

[4] This interview was played for the jury and is included in the certified record. Detective Hovan characterized Appellant's reactions to his questions as "a not normal reaction to someone being accused of heinous acts on a child." N.T., 11/5/2015, at 165.  In addition, Detective Hovan thought Appellant's "calm demeanor" was "not normal." *Id*.

[5] Mother was charged separately, and she eventually pleaded guilty to charges related to the abuse.

Appellant was charged with numerous crimes related to his ongoing sexual abuse of M.M. A jury trial took place beginning November 4, 2015. At trial, the Commonwealth presented the testimony, as outlined *supra*, of Higgins, Smith, Johnson, Dr. George, and Detective Hovan. In addition, M.M., who was ten years old at the time of trial, testified about the sexual abuse.

M.M. testified that when she lived at home, she and her younger sister shared a bedroom with bunkbeds, and M.M. slept on the bottom bunkbed. M.M. testified that Appellant would take off his pants, she would take off her pants, Appellant would "shake…up" his penis and then "put his spit on [it]," put his penis inside her vagina and then move "up and down." N.T., 11/5/2015, at 39-40. M.M. also testified that Appellant put his penis in her "butt cheeks" and it felt "B-a-d." *Id*. at 41-42. In addition, M.M. testified that Appellant put his penis in her mouth "and then green stuff came out." *Id*. at 42. She described the green stuff as being "gooey and, like, hot," and she would "spit it out in the sink or the toilet" because Appellant told her to do so. *Id*. at 43. She testified this happened on "[l]ots of different nights." *Id*. According to M.M., her sister was "[d]ownstairs watching TV" when this happened. *Id*. at 44. M.M. testified that she told Mother about it, "but [Mother] spanked" her. *Id*. at 49. M.M. reviewed the Frankenstein picture, and testified that it was Appellant's penis that she drew on it. Finally, M.M. testified that Appellant's "hands went … in [her] private, and he licked it with his tongue." *Id*. at 54. On cross-examination, M.M. testified that Mother left

M.M.'s dad for Appellant, and these incidents started occurring on the first night Appellant moved into the home.

The defense presented testimony from both Mother and Appellant. Mother testified that Appellant is still her fiancé, and she has custody of M.M.'s younger siblings. She and Appellant moved in together in November of 2011. Mother testified about Johnson coming to her door in October of 2013 to inform her M.M. "was being touched by" Appellant. N.T., 11/5/2015, at 228. Mother did not believe that this happened, and denied M.M. ever telling her this happened. According to Mother, M.M. "doesn't always tell the truth." *Id*. at 230. Mothre testified that M.M.'s siblings "don't trust her." *Id*. at 238. In addition, Mother testified that she pleaded guilty to charges related to this incident because she believed it was the best way to regain custody of her other children. *Id*. at 238-39.

Finally, Appellant testified on his own behalf. He testified that he loved and treated Mother's children just as he treated his own.[6] Appellant testified that during Detective Hovan's interview, Appellant "was in complete disbelief" because he "didn't do any of those things." *Id*. at 295.

On November 9, 2015, the jury returned a verdict of guilty on all charges, which included, *inter alia*, rape of a child. On February 19, 2016,

---

[6] Appellant has several children from his prior marriage.

Appellant was sentenced to an aggregate term of 20 to 40 years of incarceration.[7] Appellant timely filed a post-sentence motion, which was denied. On April 13, 2017, this Court affirmed Appellant's judgment of sentence. *Commonwealth v. Soto*, 169 A.3d 1165 (Pa. Super. 2017) (unpublished memorandum).

On May 7, 2018, Appellant, through counsel, timely filed the PCRA petition at issue in this case. In that petition, Appellant claimed that trial counsel was ineffective in several respects. First, Appellant claimed trial counsel was ineffective for failing to introduce character evidence. Appellant also claimed that trial counsel was ineffective for failing to object to certain testimony,[8] for failing to object to a portion of a jury instruction,[9] and for

---

[7] At sentencing, Appellant's 15-year-old and 17-year-old daughters, as well as his 13-year-old son, from Appellant's prior marriage, testified on his behalf.
[8] For example, at trial Higgins testified that she believed M.M.'s feelings were "genuine." N.T., 11/4/2015, at 59. In addition, Smith's testimony indicated that Smith believed that M.M. was not making up these allegations. *Id*. at 85. Furthermore, Detective Hovan's testimony indicated that he believed M.M. N.T., 11/5/2015, at 147. In his PCRA petition and at the hearing, Appellant argued that trial counsel should have objected to this purported "opinion" and "expert" testimony. PCRA Petition, 5/7/2018, at ¶¶ 36-89.

[9] Specifically, Appellant claimed trial counsel was ineffective for failing to object to a jury instruction where, in defining rape of a child, the trial court pointed out "that [M.M.] was approximately eight when this occurred." PCRA Petition, 5/7/2018, at ¶¶ 90-95.

withdrawing a motion for a mistrial.[10]  A hearing was held on these allegations on October 17, 2018.

At the hearing, trial counsel was first questioned about his failure to call character witnesses on Appellant's behalf.  Trial counsel testified that he recognized this case "was going to come down to credibility of two witnesses," Appellant and M.M. N.T., 10/7/2018, at 8.  It was trial counsel's strategy to focus on M.M.'s "mental health issues" and the fact that her own mother did not believe her. *Id*.  It was his "strategy from the beginning" to use the fact that Appellant never wavered in maintaining that he did not touch M.M. to bolster Appellant's credibility.  Trial counsel believed M.M.'s testimony was "inconsistent, and that was what [they] were going to be relying on." *Id*. at 9.

With respect to potential character witnesses, trial counsel testified that Appellant wanted to have his ex-wife and children testify that Appellant "has never done this before," but "that is not something that is relevant as to whether these specific actions took place." *Id*. at 9-10.  In addition, trial counsel recognized that this testimony was in contravention to the Rules of

---

[10] In this instance, it was Appellant's contention that during Mother's testimony, the Commonwealth asked a question that implied Appellant had abused her other children.  Appellant objected, and the objection was sustained.  Appellant moved for a mistrial, but the Commonwealth and Appellant worked out a curative line of questioning, so Appellant withdrew his motion for mistrial. *See* PCRA Petition, 5/7/2018, at 96-109.

Evidence.[11] Trial counsel also testified that he felt he established Appellant's law-abiding and non-violent behavior through Appellant's testimony. *Id*. Trial counsel did not feel he "needed to bolster [Appellant's character] at the trial." *Id*. at 10. In his opinion, M.M. "was extremely … incredible, and [they] were able to demonstrate that during the trial." *Id*.

In addition, trial counsel was concerned about opening the door to attacking Appellant's character. Specifically, he wanted to keep out issues "regarding [Appellant's] military services." *Id*. Trial counsel testified that he was concerned with Appellant's "discharge." *Id*. However, trial counsel initially testified that he could not recall his specific concern. Then, through his testimony at the hearing, it was revealed that Appellant received an Article 15 sanction for drug abuse,[12] and he was subsequently honorably discharged from military service.[13] *Id*. at 11-12.

---

[11] See Pa.R.E. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.").

[12] *See* 10 U.S.C.A. § 815 (regarding commanding officer's non-judicial punishment (NJP)). "Congress considered NJP to be disciplinary, not criminal, in nature." *United States v. Trogden*, 476 F. Supp. 2d 564, 568 (E.D. Va. 2007). "NJP provides military commanders with an essential and prompt means of maintaining good order and discipline and also promotes positive behavior changes in service members without the stigma of a courtmartial conviction." *Id*.

[13] Trial counsel also testified about his failing to object to purported opinion/expert testimony, his failing to object to the jury instruction, and his withdrawal of the motion for mistrial. With respect to the purported

Next to testify was Erin Wanek, who is the cousin of Appellant's ex-wife. She testified she has known Appellant for 20 years and knows other people in the community who know him. She testified that Appellant's reputation for being peaceful, law-abiding, and honest was "fantastic." *Id*. at 39. She testified she was available and willing to testify as such at trial, but she was never asked to do so. After her testimony, the Commonwealth stipulated that all ten other individuals scheduled to testify at the hearing would testify similarly to Wanek.[14] Appellant also testified at the PCRA hearing.

_____

opinion/expert testimony, it was trial counsel's position that these individuals were permitted to make such observations, and the fact that Appellant was charged with these crimes indicates that Higgins, Smith, and Detective Hovan believed M.M. With respect to the jury instruction, it was trial counsel's position at the hearing that he "did not notice" the statement that indicated M.M. was eight years old when this occurred. N.T., 10/17/2018, at 32. Finally, with respect to the withdrawal of the motion for mistrial, it was trial counsel's position that the curative line of questioning was acceptable. N.T., 10/17/2018, at 36.

[14] On appeal, it is the Commonwealth's position that this Court is not permitted to consider any of this testimony due to Appellant's failing "to certify a witness list in his PCRA petition." Commonwealth's Brief at 6. *See* 42 Pa.C.S. § 9545(d)(1) (requiring petitioners to include a signed certification as to each intended witness; failure to comply renders the testimony of the proposed witness inadmissible); *Commonwealth v. Pander*, 100 A.3d 626, 642 (Pa. Super. 2014) (holding that petitioner or his attorney must file a certification certifying the substance of a witness's testimony or the witness cannot testify at an evidentiary hearing). According to the Commonwealth, it pointed out this issue in its response to Appellant's PCRA petition, yet Appellant did not rectify this error. Commonwealth's Brief at 6. However, our review of Appellant's PCRA petition reveals that it includes e-mails to PCRA counsel from five witnesses stating the nature of his or her testimony. *See* PCRA Petition, 5/7/2018, at Exhibit A. Moreover, our review of the transcript from the PCRA hearing does not reveal that the Commonwealth placed this objection on the

On December 31, 2018, the PCRA court issued an order and opinion dismissing Appellant's petition, concluding that counsel was not ineffective in his representation of Appellant. Appellant timely filed a notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant sets forth the same four issues he raised in his PCRA petition. We begin with Appellant's contention that the PCRA court erred in concluding that trial counsel was not ineffective for failing to call character witnesses. Appellant's Brief at 4-14. We review such claims using the following standard.

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

**Commonwealth v. Benner**, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting

**Commonwealth v. Perry**, 128 A.3d 1285, 1289 (Pa. Super. 2015)).

---

record at the hearing. Not only did the Commonwealth permit the hearing to proceed, but it then stipulated to the testimony of the witnesses. N.T., 10/17/2018, at 42. Thus, we disagree with the Commonwealth's position, and will consider the evidentiary record developed at the PCRA hearing in our review.

"[C]ounsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018).

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa. Super. 2018) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

Generally, evidence of a person's character may not be admitted to show the person acted in conformity with such character on a particular occasion. Pa.R.E. 404(a). In a criminal case, however, a defendant may offer evidence of his or her character traits which are pertinent to the crimes charged, and the Commonwealth may offer evidence to rebut the trait. Pa.R.E. 404(a)(2). Testimony must be about the defendant's reputation, not the witness's opinion of the character or character trait of the defendant. Pa.R.E. 405(a). "Such evidence must relate to a period at or about the time the offense was committed, and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor." ***Commonwealth v. Goodmond***, 190

A.3d 1197, 1201-02 (Pa. Super. 2018). On cross-examination, the Commonwealth may inquire into relevant specific instances of the person's conduct probative of the character trait in question. Pa.R.E. 405(a)(1). However, the Commonwealth may not inquire into allegations of other criminal conduct by the defendant that did not result in conviction. Pa.R.E. 405(a)(2).

> Our Supreme Court has determined that "[t]he failure to call character witnesses does not constitute *per se* ineffectiveness." ***Commonwealth v. Treiber***, [] 121 A.3d 435, 463 ([Pa.] 2015). It is axiomatic that when a PCRA petitioner claims counsel was ineffective for failing to call a witness, he or she must establish "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." ***Id.*** [] at 464.

***Goodmond***, 190 A.3d at 1201-02.

Furthermore, with respect to character testimony in a case "where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility. Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." ***Commonwealth v. Hull***, 982 A.2d 1020, 1025-26 (Pa. Super. 2009) (quoting ***Commonwealth v. Weiss***, 606 A.2d at 442, 443 (Pa. 1992)). "Along these lines, we note that character testimony alone can be grounds for acquittal. Indeed, a defendant who presents character evidence is entitled to a jury instruction telling the

jurors that evidence of good character may create a reasonable doubt, thus requiring a verdict of not guilty." ***Commonwealth v. Hoover***, 16 A.3d 1148, 1151 (Pa. Super. 2011) (internal citation omitted).

In dismissing Appellant's petition, the PCRA court concluded the following.

> In the instant matter, trial counsel testified that he had talked to [Appellant] about presenting character evidence testimony. Trial counsel indicated that … "there wasn't anyone that was going to be able to come in and talk about how they had held him out in the community prior to this as being chaste with children…." [N.T., 10/17/2018, at 8.] Additionally, trial counsel testified that he did not think [character testimony] was necessary because the victim's own [m]other testified that she did not believe her own daughter. Additionally, trial counsel testified that he was able to address [Appellant's] character for being a law-abiding citizen through [Appellant's] own testimony. [***Id***. at 9.] Likewise, [Appellant] was able to testify that he had no past history of violent behavior. [***Id***.] Trial counsel did not think it was necessary to bring in that additional testimony.[9] The Commonwealth also had an interest in attacking [Appellant's] character had character evidence been introduced.[10] Finally, trial counsel indicated that the testimony presented is what was needed. Both the victim's mother and [Appellant] testified in this matter. Trial counsel did not think it was necessary and was not willing to take the risk of bringing this information in.
>
> _____
> [9] Trial counsel had indicated that [Appellant] wanted to bring in his ex-wife and children [] to testify that something like this has never happened before. However, trial counsel indicated that the rules of evidence would have prohibited this testimony from coming in. [N.T., 10/17/2018, at 9.]
>
> [10] At the time of trial, there was [*sic*] some questions regarding [Appellant's] military service and his discharge. [N.T., 10/17/2018, at 10-11.]
>
> As such, trial counsel had a reasonable basis for not presenting the witnesses' testimony to establish [Appellant's]

- 14 -

character. This was a sound trial strategy due in part to [Appellant's] own testimony and the victim's own [m]other testifying that she did not believe her own daughter. Any presentation of character evidence may have opened the door to [Appellant's] past character which surely would have been damaging to his case. Because trial counsel had a reasonable basis for his failure to call character witnesses at trial, [Appellant] fails the second prong of the ineffectiveness standard and is not eligible for relief.

PCRA Court Opinion, 12/31/2018, at 4-5 (some citations and footnotes omitted).

On appeal, Appellant assails many of the aforementioned conclusions. First, Appellant argues that "the witnesses could not have been impeached with any prior criminal record." Appellant's Brief at 9. According to Appellant, "[t]he Article 15 military sanction could not have been used for impeachment purposes because it does not qualify as a conviction for purposes of Pa.R.E. 405(a)(2)." Appellant's Brief at 10. Appellant goes on to argue that even if it were a criminal conviction, "which would allow impeachment for being a law-abiding citizen, [Appellant] still would have had good character for truthfulness and peacefulness, and the sanction for drug use would not have been admissible to impeach [Appellant's] witnesses if they testified to those character traits." *Id*. at 12-13.

As set forth by Appellant, the Rules of Evidence only permit the Commonwealth to utilize criminal **convictions** in cross-examination of character witnesses in a criminal trial. **See** Pa.R.E. 405(a)(2); **Commonwealth v. Kuder**, 62 A.3d 1038, 1058 (Pa. Super. 2013) ("[T]he

Commonwealth may not cross-examine a character witness about a defendant's uncharged criminal allegations … or a defendant's arrests that did not lead to convictions."). As set forth *supra*, it is clear that Appellant's Article 15 sanction for drug abuse was not a criminal conviction, but is more akin to uncharged criminal conduct or criminal conduct not resulting in a conviction. Thus, we agree with Appellant that the Commonwealth would not have been entitled to cross-examine any character witnesses offered by Appellant on this basis. Accordingly, the PCRA court committed an error of law in concluding that trial counsel had a reasonable basis for not calling character witnesses for fear of opening the door to this evidence.

Appellant also argues that the PCRA court erred "in conflating the availability of fact witnesses with the importance of character witnesses…. There is simply no case which supports the proposition that the availability of a potentially favorable fact witness justifies the failure to present character witnesses." Appellant's Brief at 13.

With respect to this issue, we point out that the PCRA court's reasoning is both inconsistent and not supported by the record. The PCRA court concluded that Appellant and Mother were able to present testimony of Appellant's law-abiding and peaceful character through their testimony. **See** PCRA Court Opinion, 12/31/2018, at 4.

Our review of the testimony of Appellant and Mother reveals that they did not testify about Appellant's law-abiding or peaceful character. Instead,

their testimony was limited to factual testimony regarding Appellant's good relationship with and love of M.M. Moreover, had trial counsel actually presented the character evidence the trial court concluded he did present, trial counsel should have asked for the jury instruction "telling the jurors that evidence of good character may create a reasonable doubt, thus requiring a verdict of not guilty." *Hoover*, 16 A.3d at 1151. Trial counsel did not do this. Thus, we conclude that the PCRA court's conclusion that trial counsel was not ineffective for failing to present character evidence because Appellant was able to present character evidence through his own testimony and the testimony of Mother is not supported by the record.

Based on the foregoing, we hold that the PCRA court's rationale regarding trial counsel's strategy with respect to character witness testimony was neither supported by the record nor free of legal error. Thus, we now examine the record to determine whether Appellant has satisfied the following elements:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Goodmond*, 190 A.3d at 1202.

At the PCRA hearing, Wanek testified that she "was never asked to" testify on Appellant's behalf at trial, and had she been asked, she was available and "[a]bsoutely" would have testified. N.T., 10/17/2018, at 39-40.

- 17 -

In addition, the Commonwealth stipulated that all nine additional witnesses at the hearing would have testified similarly. *Id*. at 42. Thus, we conclude that Appellant has satisfied the following: 1) the witnesses existed, 2) the witnesses were available to testify, and 3) the witnesses were willing to testify.

We now consider whether trial counsel "knew of, or should have known of, the existence of these witnesses." *Goodmond*, 190 A.3d at 1202. Trial counsel testified that he spoke to Appellant about character witness testimony, but felt that it was either irrelevant or not necessary, and therefore chose not to pursue it. Based upon this testimony, and having concluded that trial counsel's rationale for not presenting character testimony was unreasonable, we conclude that even if trial counsel did not know of these witnesses, trial counsel "should have known" about these character witnesses because Appellant would have made them available had trial counsel asked. Thus, we conclude that element is satisfied.

We now consider whether "the absence of the testimony of the witness[es] was so prejudicial as to have denied the defendant a fair trial." *Id*. This element is akin to the prejudice prong of the ineffective-assistance-of-counsel test.[15] Appellant argues this case is analogous to *Weiss*, *supra*. Appellant's Brief at 8. In *Weiss*, our Supreme Court considered whether trial

---

[15] Because the PCRA court concluded that trial counsel had a reasonable basis for not calling character witnesses, it did not address the prejudice prong. In addition, the Commonwealth did not address this prong in its brief on appeal.

counsel was ineffective for failing to present character evidence in a case where a four-year-old victim alleged her father "woke her up, inserted his finger and his penis into her vagina, put Cheerios in her vagina, and cut her vaginal area with a plastic knife." 606 A.2d at 441. At that time, the victim's parents were involved in a bitter custody battle, and this incident allegedly occurred during the victim's overnight visit with her father. When the victim acted abnormally upon return to her mother, her mother took the victim to the doctor, who "observed a one inch cut on the child's genital area consistent with having been cut by a plastic knife." *Id*. "The examination also revealed a torn hymen." *Id*. No character witnesses were called on Weiss's behalf. Weiss was convicted, and it was Weiss's position on appeal that the failure of his trial counsel to call character witnesses was ineffective assistance of counsel. At the evidentiary hearing on his petition, Weiss offered the testimony of character witnesses including his wife's parents and brother, all of whom would have testified "to [Weiss's] good character reputation and his wife's lack thereof." *Id*. at 442.

In considering this issue, our Supreme Court offered the following.

> Appellant must demonstrate that the alternative not selected by counsel offered a substantially greater chance of success than the tactic chosen. To properly determine whether prejudice resulted from the quality of counsel's representation, we must focus on counsel's overall trial strategy and view his performance as a whole.

> Counsel's stated strategy was not to contest the physical findings of sexual abuse, but to focus on the fact that it may have been [Weiss's] wife, not [Weiss] who "set the whole thing up."

(N.T. 11/17/87, p. 34). It would have been entirely consistent as well as highly beneficial, in light of this strategy, to present character witnesses, who not only would vouch for [Weiss's] good character, but would have impeached his wife's character at the same time.

*Weiss*, 606 A.2d at 443 (some citations omitted).

Based on the foregoing, our Supreme Court concluded trial counsel was ineffective for failing to call character witnesses, and granted Weiss a new trial. In this case, as in *Weiss*, presentation of character witness testimony would have been consistent with trial counsel's strategy. It was trial counsel's position that Appellant maintained throughout the entire case that he did not commit these acts. In other words, trial counsel wanted the jury to believe that Appellant would not do something like this. In fact, trial counsel called Mother, who confirmed that she was surprised at these allegations. Thus, it is clear that having other individuals testify to Appellant's reputation in the community for being an honest, peaceful, and law-abiding citizen would certainly have been beneficial, and could have changed the outcome of this case.

In fact, this Court has consistently concluded in cases with similar facts that the failure to call character witnesses was prejudicial. In *Hull*, *supra*, this Court affirmed the PCRA court's granting Hull a new trial due to trial counsel's failure to call character witnesses. Hull was accused and convicted of performing sexual acts on his adopted daughter. "The only evidence presented at trial was the recollection of witnesses, including those of the

- 20 -

victim and her brother, of the events." ***Hull***, 982 A.2d at 1022. The PCRA court granted Hull a new trial, concluding that trial counsel was ineffective for failing to present character witnesses on Hull's behalf. This Court affirmed, holding counsel did not act reasonably by failing to conduct a thorough investigation into the availability of character witnesses, particularly when counsel's "overall strategy was to question the children's credibility by formulating in the jurors' minds a motive for the children to fabricate their allegations against [Hull] and [his wife]." ***Id***. at 1026. This Court held that character witnesses would have been consistent with trial counsel's stated trial strategy, which was to "convince the jury that the children had a motive to fabricate their allegations against [Hull]. Evidence of [Hull's] good character, particularly in the absence of any bad-character evidence outside of the children's testimony, would have bolstered his defense." ***Id***.

We also find this Court's decision in ***Commonwealth v. Edwards***, ___ A.3d___, 2019 WL 2041912 (Pa. Super. May 8, 2019) (non-precedential decision), persuasive. In ***Edwards***, the PCRA court granted Edwards a new trial because trial counsel failed to call character witnesses. In that case, Edwards was accused of sexually assaulting his then-six-year-old stepson. At trial, no character testimony was presented on Edwards's behalf. At the PCRA hearing, Edwards offered the testimony of four of his own relatives, who were available and willing to testify to Edwards's peaceful and law-abiding nature. The PCRA court concluded that Edwards satisfied the ineffective-assistance-

of-counsel standard and, and after the Commonwealth appealed, this Court affirmed the PCRA court. *Id*.

Based upon the foregoing, the nature of the instant matter leads us to conclude that the failure to present character witnesses on Appellant's behalf was prejudicial. Those witnesses could not have been cross-examined on Appellant's Article 15 sanction, as suggested by trial counsel and the PCRA court. Moreover, evidence of Appellant's peaceful and law-abiding character was consistent with trial counsel's strategy, which was to show that Appellant was telling the truth that he did not sexually abuse M.M.

Based on the foregoing, the PCRA court erred and abused its discretion by denying Appellant PCRA relief. Accordingly, we reverse the order of the PCRA court, vacate Appellant's judgment of sentence, and remand for a new trial.[16]

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2019

---

[16] Because we have concluded that trial counsel was ineffective for failing to call character witnesses, we need not determine if he was also ineffective as to the other three issues raised on appeal.