J-S03025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN DAVID DAWSON | : | |
| | : | |
| Appellant | : | No. 66 WDA 2020 |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Somerset County Criminal Division at
No(s):  CP-56-CR-0000306-2009

BEFORE:   DUBOW, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: APRIL 6, 2021**

John David Dawson (Appellant) appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546.  After careful review, we affirm.

In a prior decision, we summarized the factual and procedural history of this case as follows:

> On November 9, 1981, [Appellant's] wife, Kathleen Dawson ("the victim"), left her place of employment at Windber Hospital at around 11:00 p.m.  Shortly after midnight, the victim's vehicle was found on fire on Cable Hill Road in Conemaugh Township.  The police responded to the fire and found the victim's body inside the burning vehicle.  A blackjack[1] was found at the scene and the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] A blackjack is weapon, specifically a "short bludgeon consisting of a heavy head, as of metal, on an elastic shaft or with a flexible handle."  Black's Law Dictionary 154 (5th ed. 1979).  Although more recent editions of Black's Law

police observed signs of a struggle. The medical examiners subsequently found evidence of blunt force trauma to the victim's head. At approximately 12:20 a.m., [Appellant] called the police to inquire about his wife's whereabouts. [Appellant] indicated that she should have been home by that time. The police did not arrest [Appellant] at this time.

Following years of investigation, [Appellant's] nephew, Duane Schmidt ("Schmidt"), implicated [Appellant] in the murder of the victim in early 2009. Another witness, Don Eller ("Eller"), linked the blackjack found at the scene of the crime to [Appellant]. Thereafter, on April 18, 2009, the Commonwealth charged [Appellant] with criminal homicide, criminal conspiracy, and two counts of arson. A preliminary hearing was held at which Schmidt and one of the lead investigating officers, Officer Robert Berkebile, testified. Following the preliminary hearing, Schmidt died and Officer Berkebile suffered a stroke. [Appellant] then filed a Motion for pre-trial relief, seeking, *inter alia*, a dismissal of the proceedings due to the expiration of the statute of limitations, motion to suppress, and a motion to exclude any prior statements or testimony of deceased individuals and to exclude testimony of any witnesses at any previous proceedings. The trial court denied [Appellant's] Motion for pre-trial relief.

The case proceeded to a jury trial in March 2011. On April 5, 2011, the trial court granted [Appellant's] Motion for judgment of acquittal on the conspiracy and arson counts. On April 8, 2011, the jury found [Appellant] guilty of first-degree murder. The trial court sentenced [Appellant] to life in prison. [Appellant] filed post-sentencing Motions, which were denied.

[Appellant] filed a timely Notice of appeal. The trial court ordered [Appellant] to file a Pennsylvania Rule of Appellate Procedure 1925(b) concise statement. [Appellant] filed a timely Concise Statement.

_____

Dictionary no longer include a definition for a blackjack (presumably because they have become less common), the definition from 1979 is proximate to the 1981 date of the murder in this case.

- 2 -

***Commonwealth v. Dawson***, 61 WDA 2012, at *1-3 (Pa. Super. Feb. 28, 2013) (unpublished memorandum). This Court affirmed Appellant's judgment of sentence, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Dawson***, 162 WAL 2013 (Pa. Nov. 7, 2013).

On February 5, 2015, Appellant filed a timely *pro se* PCRA petition. Thereafter, Appellant filed several *pro se* pleadings, including a motion for an evidentiary hearing, motion for discovery, and a memorandum of law in support of his petition. The PCRA court appointed counsel, who subsequently requested to withdraw due to a conflict of interest; the PCRA court granted the motion to withdraw and appointed new counsel. On June 23, 2015, the Commonwealth filed a motion to dismiss Appellant's PCRA petition.[2] Following a hearing, the PCRA court denied the Commonwealth's motion on October 6, 2015.

On January 8, 2016, Appellant, while still represented by counsel, filed a *pro se* supplemental memorandum of law in support of his petition. Recognizing that Appellant was still represented when he filed his *pro se*

---

[2] The Commonwealth mistakenly claimed Appellant's PCRA petition was untimely because it failed to factor the time allowance for Appellant to seek review with the United States Supreme Court. **See** U.S. Sup. Ct. R. 13 ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after the entry of the judgment.").

pleading, the PCRA court ordered "that no action be taken on the pending Post-Conviction Relief Act Petition pending receipt of information from [counsel] regarding [Appellant's] intentions relative to representation. Order, 1/15/16. On May 11, 2016, Stephen M. Misko, Esq., entered his appearance as private counsel for Appellant; Appellant's court-appointed counsel filed a petition to withdraw on May 26, 2016, which the PCRA court granted on June 3, 2016.

On October 2, 2017, the PCRA court granted Appellant's request to file an amended PCRA petition. On November 30, 2017, Appellant, through counsel, filed an amended petition raising 12 claims of ineffective assistance of counsel. The PCRA court held a hearing on November 8, 2018, November 9, 2018, and May 21, 2019. Thereafter, both parties filed briefs in support of their positions. On December 17, 2019, the PCRA court denied Appellant's petition. Appellant filed this timely appeal, in which he presents the following eight issues:

> Whether the [PCRA] court erred when it denied Appellant's request for a new trial based on ineffective assistance of trial/appellate counsel:
>
> 1. in failing to call character witnesses;
>
> 2. in failing to investigate and call witnesses that would have established that the blackjack found at the crime scene belonged to another individual;
>
> 3. in failing to [] file a Motion to Suppress and/or Motion in Limine relating to the blackjack lineup;

4. in failing to [] object to the testimony of Don Eller regarding the blackjack he observed at Appellant's apartment in the 1970's;

5. in allowing the jury to know that Appellant was incarcerated and/or requesting a curative instruction;

6. in failing to appeal the trial court's abuse of discretion in allowing Gerald Blough to testify that Appellant claimed it was easy to commit a murder in Conemaugh Township;

7. in failing to effectively appeal the trial court's abuse of discretion in permitting the preliminary hearing testimony of Duane Schmidt to be read into the record at trial; and,

8. in failing to effectively appeal the trial court's denial of Appellant's Motion to Dismiss due to pre-arrest delay.

Appellant's Brief at 22.

We begin with our standard of review:

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Benner*, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting

*Commonwealth v. Perry*, 128 A.3d 1285, 1289 (Pa. Super. 2015)).

- 5 -

All of Appellant's issues assail the effectiveness of trial counsel, Joseph B. Policicchio, Esq. (Attorney Policicchio).[3]  With respect to these claims, our Supreme Court has explained:

> It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness.  ***Commonwealth v. Cooper***, 941 A.2d 655, 664 (Pa. 2007).  To overcome this presumption, a petitioner must establish that:  (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different."  ***Id.***  A PCRA petitioner must address each of these prongs on appeal.  ***See Commonwealth v. Natividad***, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the ***Pierce*** elements on appeal to this Court").  A petitioner's failure to satisfy any prong of this test is fatal to the claim.  ***Cooper***, 941 A.2d at 664.

***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) (citations modified).

In his first issue, Appellant argues Attorney Policicchio was ineffective for failing to call character witnesses to testify at trial on Appellant's behalf.  Appellant's Brief at 29-32.  Appellant asserts, "Attorney Policicchio never brought up the topic or discussed character witnesses with him, nor did he explain the legal significance of character witnesses."  ***Id.*** at 29.  Appellant further states:

_____

[3] Attorney Policicchio also represented Appellant on direct appeal.

The Commonwealth's case against Appellant was circumstantial in nature, as no direct evidence linked him to the crime scene. Appellant had no criminal history, no other prior acts of charged or uncharged violence, and police were never called to his residence for a domestic dispute. Knowing this, Attorney Policicchio unilaterally made the decision not to use character witnesses ("was not part of our defense").

* * *

By not calling character witnesses, the jury was deprived of hearing positive and substantial character trait evidence of Appellant which, in and of itself may have been sufficient to raise a reasonable doubt and result in an acquittal.

Appellant's Brief at 30-31.

The relevant law provides:

The failure to call character witnesses does not constitute *per se* ineffectiveness. In establishing whether defense counsel was ineffective for failing to call witnesses, appellant must prove: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Treiber*, 121 A.3d 435, 463-64 (Pa. 2015) (citation and

paragraph break omitted).

At the PCRA hearing, Attorney Policicchio contradicted this claim.

Attorney Policicchio testified:

It was something that we had discussed and something that we decided not to do for a very specific tactical reason. And I have to tell you that the issue of character witnesses in this case is – is – understand, [Appellant] had lived in the state of Florida for some 26 or 27 years. The issue then becomes: What character witnesses are you going to be calling? Are you going to call someone from Jacksonville or are you going to call a local character witness? If you call a local character witness, the

District Attorney is going to be – is going to have a field day with that because the District Attorney is going to ask you whether or not that local character witness is familiar with his present character.

If you call a Florida character witness, you're going to get into the same sort of difficulties. Does the Florida character witness know anything about what [Appellant's] character was when he was in Pennsylvania?

This is the first issue.

Then we have all kinds of other problems attentive with character witnesses.

N.T., 11/9/18, Vol. 2 at 41. Attorney Policicchio stated that Appellant had a prior criminal record, and he was concerned the Commonwealth would cross-examine a character witness or Appellant regarding Appellant's convictions if he presented good-character evidence. *Id.* at 42. Similarly, to refute a character witness' testimony that Appellant was non-violent, Attorney Policicchio expressed concerns regarding a jailhouse informant who could testify to threats Appellant made while incarcerated, and a witness who "said [Appellant] had conversations with them in a bar saying something to the effect that [Appellant] wanted to do harm to his wife if – if they would – there was conversation to that effect." *Id.* at 44.

Based on the foregoing testimony, which the PCRA court credited, Appellant's first issue lacks arguable merit because Appellant failed to demonstrate that trial counsel lacked a reasonable basis for his actions. *See Treiber, supra*; *see also Commonwealth v. Hull*, 982 A.2d 1020, 1023 (Pa. Super. 2009) ("[c]ounsel has a strategic basis for not calling character

witnesses if he has a legitimate reason to believe that the Commonwealth would cross-examine the witnesses concerning bad-character evidence.").

Appellant's second, third and fourth issues pertain to the murder weapon – a blackjack – found at the crime scene. In his second issue, Appellant argues Attorney Policicchio was ineffective for failing to investigate and call witnesses who would have testified that the blackjack belonged to another individual. Appellant's Brief at 32-42. Specifically, Appellant advances a theory that another individual, Richard J. Murray, committed the murder.[4] Thus, because Attorney Policicchio failed to present evidence to support this theory, he rendered ineffective assistance. *Id.*

During the PCRA hearing, Attorney Policicchio testified at length about his defense strategy concerning the blackjack. Attorney Policicchio stated:

> . . . I was prepared to use some of that information, and we were prepared to not utilize some of it. The issue of the blackjack was an issue where we knew that the Commonwealth was going to be calling Don Eller to the stand, and Eller was a guy who identified for the police the blackjack as being owned by [Appellant].
>
> We had reason to believe, however, that Mr. Eller was going to testify that it was not [Appellant's]; and as it ended up at trial, he did indeed testify that it was not [Appellant's].

---

[4] The Commonwealth provided documents in discovery which indicated Murray was not home when the murder occurred, and could not name an alibi witness. Murray's then-girlfriend, Lois Ference, told Pennsylvania State Police she noticed a burn mark on Murray's cheek the day after the murder. N.T., 11/9/18, Vol. 2 at 57, Ex. B. When she asked Murray what happened, Murray explained the burn was "from a radiator that blew up." *Id.* There were also reports that Murray owned a small blackjack. *Id.* In addition, Ference identified the blackjack as belonging to Murray. *Id.*

Again, our job is to establish or to ensure that the Commonwealth can't prove his guilt beyond a reasonable doubt. We have the Commonwealth's own witness who says that that blackjack was not [Appellant's].

Had Eller testified that the blackjack was [Appellant's], then we would have called -- we could have called Trooper Penatzer, who I think was available or at least we could have gotten him there. I believe Trooper Marker and other individuals who would have been able to testify that at a separate lineup, the blackjack was identified as being that of Mr. Murray.

So did we use that information? No, I don't think we had to because, at trial, we were able to establish, through the Commonwealth's own witness, that there was nothing located physically at the scene that connected [Appellant] to the scene.

N.T., 11/9/18, Vol. 2 at 64-65. Attorney Policicchio went on to explain that he hesitated to offer evidence linking Murray to the crime because "[t]he jury could have concluded . . . that [Appellant] was somehow complicit with someone else, that is, Mr. Murray. It would have been dangerous for us to get involved with Murray." N.T., 5/21/19, Vol. 3 at 31.[5]

Instantly, evidence from the PCRA hearing demonstrated that if Attorney Policicchio put forth evidence of Murray's connection to the murder, Appellant would have been implicated as a co-conspirator. Attorney Policicchio employed a defense strategy he reasoned would protect Appellant from incurring additional charges, while also defending the criminal homicide

_____

[5] The Commonwealth had charged Appellant with conspiracy, but the charge was thrown out after the close of the Commonwealth's case-in-chief "because there was no testimony about any conspiracy during the Commonwealth's case in chief[.]" N.T., 11/9/18, Vol. 2 at 92.

charge. With regard to the second reasonable basis prong for ineffectiveness, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." **Commonwealth v. Washington**, 927 A.2d 586, 594 (Pa. 2007). Here, it was reasonable for Attorney Policicchio to evade Appellant's role as a co-conspirator, particularly where the Commonwealth's own witness, Don Eller, repudiated his identification of the blackjack. Accordingly, a reasonable basis existed for Attorney Policicchio's defense strategy regarding the blackjack, and we discern no abuse of discretion by the PCRA court in rejecting this claim.

In his third and fourth issues, Appellant asserts Attorney Policicchio was ineffective for failing to file a motion to suppress Don Eller's identification of the blackjack and for failing to object to Eller's testimony at trial. Appellant explained that in 2009, Don Eller told Pennsylvania State Police (PSP) that sometime in the 1970s he witnessed Appellant holding a blackjack at Appellant's apartment. PSP presented Eller with a lineup of three blackjacks.

> The first two blackjacks were obtained from Troopers assigned to the Mounted Division. These blackjacks were similar in appearance, manufactured, black leather, roughly the same length and style, and not as worn as the third blackjack. The third blackjack, which was found at the crime scene, appeared to be homemade, was very worn, thirty years old, and had black tape on it. The first two looked "brand new" and looked nothing like the third blackjack.

Appellant's Brief at 42-43 (citation omitted). Eller identified the third blackjack – the older blackjack discovered at the crime scene – as the one

- 11 -

belonging to Appellant. Appellant claims Attorney Policicchio should have filed a motion to suppress the blackjack identification as unduly suggestive.

Identification of inanimate objects does not afford a defendant the same protections as the identification of a person.

> [T]here is no basis for applying the identification procedures applicable to suspects to testimony identifying inanimate objects and we decline to extend cases protecting the accused's rights to a fair pre-trial identification to the pre-trial identification of physical evidence. There is a difference between an identification of a defendant and of an inanimate object. The due process concerns implicated in identification of a defendant are not implicated in the identification of a vehicle. **Identification of an accused tends to be direct proof of the case against him, while that of an inanimate object is only indirect proof of the defendant's guilt** . . . .
>
> Thus[, in ***Commonwealth v. Chmiel***, 889 A.2d 501, 523–24 (Pa.2005),] the Court found that **"the risks inherent in identification of inanimate objects go to the weight and sufficiency of the evidence instead of admissibility,"** and such identification evidence is properly submitted to the jury**.

***Commonwealth v. Crork***, 966 A.2d 585, 588–89 (Pa. Super. 2009) (emphasis added). Accordingly, Appellant's claim that Attorney Policicchio was ineffective for failing to file a motion to suppress the identification of the blackjack as unduly suggestive lacks merit. To the contrary, Eller's identification of the blackjack was admissible.

Further, we recognize the unusual and difficult task for the PSP to produce for identification other blackjacks that were similar to the blackjack recovered at the crime scene so as to avoid an "unduly suggestive" lineup. The blackjack recovered at the crime scene was described as "worn," "thirty

years old" and "homemade." It would be no simple task for the PSP to replicate such a weapon, especially considering that Eller's identification occurred nearly 30 years after the murder, and 40 years after Eller observed Appellant with a blackjack at Appellant's apartment.

Appellant also complains that Attorney Policicchio was ineffective for failing to object to Eller's testimony. Eller testified that sometime in the 1970s he observed Appellant handling a blackjack, but – contrary to his statement to PSP in 2009 – Eller testified that the blackjack found at the crime scene was not the blackjack he saw Appellant handling. Appellant generally cites Pennsylvania Rules of Evidence 401 and 403 to assert that Eller's testimony was "irrelevant and prejudicial to Appellant's right to a fair trial and should have been objected to by trial counsel. Attorney Policicchio had no reasonable basis in not objecting and allowing this testimony and, as such, his actions so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Appellant's Brief at 51. We disagree.

Our Supreme Court has stressed, "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011). Here, Appellant's cursory argument fails to satisfy the requirement of demonstrating actual prejudice. Appellant does not cite the record, and briefly references Pa.R.E. 401 and 403 to support

his argument. Because of this wholesale deficiency, and in light of the standard articulated above, we conclude the PCRA court correctly determined that Appellant's claim of ineffectiveness as to trial counsel's failure to object to Eller's testimony is without merit.

In his fifth issue, Appellant alleges Attorney Policicchio was ineffective for failing to object to references of Appellant's incarceration while awaiting trial. Appellant argues:

> While there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged, the court must assure the defendant a fair trial. By allowing the jury to know that Appellant had been incarcerated for over two years in the Somerset County Jail, the jury could easily infer that he was guilty of one or more of the offenses he was charged with by the Commonwealth.

Appellant's Brief at 54 (citations omitted).

During trial, there were three references to Appellant's incarceration. The first reference was made by the prosecutor, in the context of the testimony of Robert Grake, a jailhouse informant who testified about conversations he had with Appellant while the two were in the Somerset County Jail. The second reference was also made by the prosecutor, and related to the playing of a telephone recording of Appellant when he was being held in Florida at the Duvall County Jail. Finally, the third reference was made by Attorney Policicchio during closing arguments. Attorney Policicchio stated:

> Now, [Appellant] was presumed to be innocent the day the charges were filed. He was presumed to be innocent the day he was arrested. He's been presumed to be innocent during the entire time that he's been in jail for these past roughly two years.

- 14 -

He has been presumed to be innocent as he sits here today. And that presumption of innocence continues until such time as the Commonwealth meets its burden of proving him guilty.

N.T., 4/8/11, at 6.

The trial court issued curative instructions as to the first and second references. Addressing the testimony of Robert Grake and Appellant's incarceration in the Somerset County Jail, the court advised:

Ladies and Gentlemen, Mr. Grake is the next witness, and it is my understanding that he is going to testify regarding some conversations that he had with [Appellant] while they were both incarcerated in the Somerset County Jail.

[Appellant] was being held in the jail on these charges and on these charges alone and not any other criminal activity alleged or proved.

N.T., 4/1/11, at 99-100.

Regarding the reference to Appellant's incarceration in Duvall County, the court stated:

[Appellant] was in the Duvall County Jail because he was picked up on the charges that are filed here in Somerset County and was being held prior to being returned here.

Please don't draw any kind of inference or adverse inference regarding his guilt or innocence from the resultant fact that he was at least in jail at that point in time because that is the normal process. When an out-of-state arrest warrant is issued, the people in the receiving state, when they find the person, they bring him or her to jail until such time as the authorities that have asked for his or her return address that.

So this is normal procedure for anyone who would be arrested on criminal charges out of state.

N.T., 4/8/11, at 8.

- 15 -

Appellant contends that while the court's instruction to explain Appellant's incarceration in the Duvall County Jail "may have been adequate . . . its instruction, prior to the testimony of Robert Grake . . . was wholly inadequate." Appellant's Brief at 53. We are not persuaded by this argument.

Our Supreme Court has explained that "although generally no reference may be made at trial in a criminal case to a defendant's arrest or incarceration for a previous crime, there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged." *Commonwealth v. Johnson*, 838 A.2d 663, 680-81 (Pa. 2003). Here, the jury could have reasonably inferred that the references to Appellant's incarceration related to the charges for which he was being tried. Thus, the evidence "did not either expressly or by reasonable implication convey the fact of a prior criminal offense unrelated to the criminal episode for which [Appellant] was then on trial." *Commonwealth v. Wilson*, 649 A.2d 435, 446 (Pa. 1994). Moreover, a jury is presumed to follow a trial court's cautionary instructions. *See Commonwealth v. Jones*, 668 A.2d 491, 504 (Pa. 1995). This issue lacks merit.

Finally, with respect to Attorney Policicchio's reference to Appellant's incarceration during closing arguments, this claim is waived for lack of development. While Appellant quotes Attorney Policicchio's reference to Appellant's incarceration, he fails to discuss this issue within the framework of an ineffective assistance of counsel claim. Appellant also provides no citation

- 16 -

to pertinent legal authority. ***Commonwealth v. Rush***, 959 A.2d 945, 950-51 (Pa. Super. 2008) ("[I]t is the appellant's obligation to present developed arguments and, in so doing, apply the relevant law to the facts of the case, persuade us there were errors, and convince us relief is due because of those errors. If an appellant fails to do so, we may find the argument waived.").

In his sixth issue, Appellant asserts Attorney Policicchio was ineffective for failing to challenge on appeal the testimony of Gerald Blough. At trial, Gerald Blough testified that during a conversation with Appellant, Appellant remarked, "[i]f you are going to kill somebody – if you are going to murder somebody, do it in Conemaugh Township." N.T., 3/31/11, Vol. 5 at 66-67. Blough further testified that Appellant named four unsolved homicides that occurred in Conemaugh Township to support his statement. ***Id.*** at 67. Attorney Policicchio objected to this testimony, but the trial court overruled the objection. On direct appeal, Attorney Policicchio did not re-raise the issue. Appellant contends Attorney Policicchio's failure to raise the issue on appeal constituted ineffective assistance of counsel.

This ineffectiveness claim fails because Appellant has not demonstrated a reasonable probability that had Attorney Policicchio successfully raised the trial court's ruling to admit the testimony of Gerald Blough on appeal, the result of the proceeding would have been different. ***See Commonwealth v. Sneed***, 899 A.2d 1067, 1084 (Pa. 2006) (to demonstrate prejudice, the petitioner must show there is a reasonable probability that, but for counsel's

error or omission, the result of the proceeding would have been different). On direct appeal, Appellant litigated a sufficiency of the evidence claim, and this Court determined it lacked merit. **Dawson**, 61 WDA 2012, at *12. In rejecting Appellant's sufficiency challenge, we concluded — without considering Blough's statement — that the evidence was sufficient to support Appellant's murder conviction. The Commonwealth presented ample evidence of Appellant's guilt, irrespective of Blough's testimony, and thus, Appellant cannot prove the prejudice prong of his collateral claim that Attorney Policicchio rendered ineffective assistance for failing to challenge Blough's testimony on direct appeal.

In his seventh issue, Appellant contends Attorney Policicchio was ineffective for failing to "preserve his objection to the Schmidt testimony being read into the record and, as such, may have effectively waived his right to do so on appeal." Appellant's Brief at 65. At Appellant's preliminary hearing, Duane Schmidt, Appellant's cousin, provided testimony linking Appellant to his wife's murder. Because Schmidt died after the preliminary hearing, but before trial, Appellant sought the exclusion of Schmidt's testimony.[6] Appellant

---

[6] The trial court permitted portions of Schmidt's testimony from the preliminary hearing to be read into the record at trial. Specifically, the trial court admitted testimony from Schmidt claiming he had unrestricted access to the crime scene and observed a blackjack on the ground. N.T., 6/4/09, at 45. He also testified that he immediately smelled a foul odor when Appellant arrived at his grandmother's house the morning after the murder. **Id.** at 125-26. In addition, Schmidt alleged that Appellant had burn marks and blisters on both of his cheeks. **Id.** at 88-91.

asserts that Schmidt's death foreclosed Appellant's opportunity to impeach Schmidt's testimony with information obtained from discovery.

Relevant to his claim, Appellant acknowledges that Attorney Policicchio objected to Schmidt's preliminary hearing testimony being read at trial, and filed two separate motions – a motion in limine and a post-sentence motion – seeking to exclude Schmidt's testimony; Attorney Policicchio also raised the issue on direct appeal.  Appellant's Brief at 64.  Appellant argues, however, that because this Court adopted the trial court's reasoning as its own in disposing of the issue on appeal, Attorney Policicchio was "ineffective in developing this issue at the trial level, preserving it for appeal, and was further ineffective as appellate counsel in his failure to adequately litigate it as an appellate issue."  *Id.* at 65.

This claim is belied by the record.  Appellant's motion in limine, post-sentence motion and argument on direct appeal all demonstrate that Attorney Policicchio preserved, litigated, and developed the issue of the admissibility of Schmidt's preliminary hearing testimony. Trial counsel cannot be deemed ineffective merely because this Court reached the same conclusion as the trial court and adopted its reasoning.  Accordingly, this claim lacks merit.

In his eighth and final issue, Appellant alleges Attorney Policicchio was ineffective for failing to make a credible argument on appeal challenging the trial court's denial of Appellant's motion to dismiss due to the 28 year "pre-

arrest delay." In his brief filed with this Court on direct appeal, Attorney

Policicchio advanced the following argument:

> In the instant case, several individuals had died from the date of the alleged incident, all of which could very well have impaired the Appellant's ability to defend himself. Moreover, two witnesses apparently came forward in early 2009 who supported the Commonwealth's desire to press forward with the criminal charges some 28 years after the date of the incident. These two witnesses were the aforementioned Duane Schmidt and one Don Eller. There was absolutely nothing presented of record to indicate that either Schmidt or Eller were not known to the Commonwealth from the date of the incident or that they had secreted themselves from the knowledge of either the Conemaugh Township Police Department or the Pennsylvania State Police. Both of these witnesses could have come forward with the information that they possessed, and the Commonwealth could have certainly interviewed both of them during the intervening 28-year time period.
>
> Additionally, Appellant contends that the death of Schmidt further evidences the prejudice that the 28-year time lapse presented. The only opportunity that Appellant had to cross examine Schmidt was at the time of the preliminary hearing, which said cross examination did not present the Appellant with a meaningful examination of Schmidt. At the time of the preliminary hearing, Appellant did not have complete discovery information which would have given him the opportunity to fully cross examine Schmidt in a manner that would have been beneficial to the defense and beneficial for presentation at trial.

Appellant's Brief at 11, ***Commonwealth v. Dawson***, 61 WDA 2012 (Pa.

Super. Feb. 28, 2013).

Instantly, Appellant asserts that his claim of counsel's ineffectiveness

"in failing to effectively appeal" the issue pre-arrest delay has arguable merit.

He states:

> While the delay in prosecution clearly did not hurt the Commonwealth's case, it was catastrophic to the defense. Four

key defense witnesses died during this delay, to wit, Ethel Dawson (Appellant's mother), John M. Dawson (Appellant's father), Elaine Schmidt (Appellant's sister) and Darrell "Doc" Dawson (Appellant's brother). All of these witnesses would have been able to testify if there was a foul odor emanating from Appellant or at his parent's trailer; the presence or absence of a burn mark on Appellant's face; the temperature of Appellant's residence the morning of November 10, 1981; and, the time period Appellant first appeared at his parent's home the night of November 9, 1981, or morning of November 10, 1981.

The other bi-product of the delay in prosecution was the death of Duane Schmidt between the time of the Preliminary Hearing and Trial. Duane Schmidt testified that had he been interviewed by the Conemaugh Township Police or PSP back in 1981, he would have immediately told them the truth about what he observed and smelled the morning of November 10, 1981. However, the police never returned his phone call.

Appellant's Brief at 72-73 (footnotes and citations omitted). Appellant's argument in this appeal reflects the same argument Attorney Policicchio made to this Court on direct appeal. Appellant is essentially attempting to re-litigate the argument by assailing Attorney Policicchio's advocacy — and lack of success—on direct appeal.

The law is clear that ineffectiveness claims are distinct issues from those raised on direct appeal, and must be reviewed under the three-prong ineffectiveness standard. *See Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa. 2006). In analyzing Appellant's issue in the context of trial counsel's ineffectiveness, we find that it lacks arguable merit. As this Court found in Appellant's direct appeal, speculative claims of possible prejudice due to the passage of time are insufficient to demonstrate prejudice in a claim of pre-arrest delay. *Dawson*, 61 WDA 2012, at *4 (citing *Commonwealth v. Neff*,

- 21 -

860 A.2d 1063, 1074 (Pa. Super. 2004)). Our Supreme Court made clear in **Collins**, **supra**, that although we will analyze a distinct claim of ineffectiveness based on an issue decided on direct appeal, in many cases the claim will fail for the same reasons it failed on direct appeal. **Id.** at 574-75. This Court addressed the issue of pre-arrest delay in Appellant's direct appeal, and in this appeal, Appellant has not demonstrated arguable merit to his claim that trial counsel's advocacy constituted ineffective assistance. Thus, this final issue lacks merit.

For the above reasons, we conclude the PCRA court did not err in rejecting Appellant's claims of ineffectiveness of counsel. Accordingly, we affirm the order denying Appellant's petition for relief.

Order affirmed.

Judge Dubow joins the memorandum.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/06/2021